# EXHIBIT E

# EXHIBIT E

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
01/05/2026  3:04PM
BY: KLANE
DEPUTY

## SUPERIOR COURT, STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA,<br><br>         Plaintiff,<br><br>vs.<br><br>COTTONWOOD SPRINGS RV, LLC,<br><br>         Defendant. | Case No.  S1300CV202580488<br><br><br>**RULING** |

| | |
|---|---|
| **HONORABLE LINDA WALLACE** | **BY:**    Melissa Crouse, Judicial Assistant |
| **DIVISION PRO TEM B** | **DATE:** January 5, 2026 |

This matter came on for an evidentiary hearing on December 29, 2025, on Plaintiff Daniel Doria's Emergency Motion for Temporary Restraining Order (TRO) and Preliminary Injunction.  Plaintiff appeared in person.  Defendant Cottonwood Springs RV, LLC appeared through attorney of record, Brittney K. Walsh.

At the hearing set on the "Emergency Motion for Temporary Restraining Order (TRO) and Preliminary Injunction" (hereafter "Motion"), the parties reached agreements on procedural matters.  Specifically, Happy Jack Lodge, LLC agreed to accept service on the TRO/Preliminary Injunction documents, and that, although not specifically named as a defendant in the Motion, the Motion would extend to Happy Jack Lodge, LLC as a defendant against which the relief is sought.  Happy Jack Lodge, LLC additionally waived its procedural rights to present witnesses and exhibits that were not already planned for the hearing (as the matter was scheduled prior to Happy Jack Lodge, LLC's inclusion in the lawsuit).

Plaintiff's Motion asks the court to "issue a Temporary Restraining Order preventing **any** eviction action, lockout, or disturbance of tenancy until a full hearing on the merits can be held." Motion, p.3 (emphasis added).  During the hearing, Plaintiff clarified that he is not seeking an order preventing the Defendants from evicting him, but rather that he seeks an order preventing the Defendants from evicting him without good cause.  Also, Plaintiff's Motion expresses his concern that the Defendants would shut off utility services and/or do an immediate lockout.

The relief sought in the Motion is a negative injunction, which is to restrain actual or threatened conduct.  Plaintiff has the burden to show that the Defendants are likely to engage in the conduct to be enjoined.  *State ex rel. Babbitt v. Goodyear Tire & Rubber Co*, 128 Ariz. 483,

Doria v Cottonwood Springs RV, LLC
S1300CV202580488
Ruling
January 5, 2026

626 P.2d 1115 (App. Div. 1 1981). An injunction may not issue to restrain a lawful act. *Jones v. Santa Cruz County*, 72 Ariz. 374, 236 P.2d 361 (1951).

Here, Defendants have not filed an eviction action. The Plaintiff has not presented any evidence that Defendants are proceeding—or are threatening to proceed—with a lockout nor with shutting off utility services in violation of the law. Instead, the Plaintiff received:

1. Notice of Material and Irreparable Breach Immediate Notice to Move dated 11/20/2025. Exhibit P.5.
2. Notice of Termination of Periodic Tenancy dated 11/25/2025. Exhibit P.6.
3. Notice of Termination of Periodic Tenancy dated 12/09/2025. Exhibit P.7.

The Plaintiff additionally sent notice to the Defendant that he would be moving out on January 9, 2026, which move out date the landlord accepted. Plaintiff contests his move-out notice as brought on by economic duress.

What Plaintiff's Motion essentially seeks is for the court to preemptively issue a ruling related to the legitimacy of his defenses to an eviction that has not been filed. The court finds that this is not a proper request. *Bd. of Supervisors of Maricopa Cnty. v. Woodall*, 120 Ariz. 379, 380, 586 P.2 628 (1978) (declaratory judgment action must involve a "justiciable controversy," which arises from "an actual controversy ripe for adjudication.) If the Plaintiff's landlord files an eviction, the Plaintiff will be given an opportunity to be heard in defense in the eviction matter. Moreover, Plaintiff has not shown a strong likelihood of success on the merits nor a probable success on the merits as the court received testimony related to allegations of pet waste, verbal abuse of staff by Plaintiff, Plaintiff's notice of a move-out date, etc.

**IT IS THEREFORE ORDERED** that Plaintiff's request for a temporary restraining order and preliminary injunction is denied.

eSigned by WALLACE, LINDA. 01/05/2026 15:02:37 EDNNnpKp

Hon. Linda Wallace

cc:    Daniel T. Doria – 989 S. Main Street Suite A PMB 407, Cottonwood, AZ 86326
       Brittney K. Walsh – H&M Law, PLLC (e)

2

# EXHIBIT F

# EXHIBIT F

DANIEL T. DORIA
989 S Main St Ste A PMB 407
Cottonwood, AZ 86326
702-279-5326
danieldoria105@yahoo.com
Plaintiff / Pro Se

IN THE SUPERIOR COURT OF ARIZONA

IN AND FOR THE COUNTY OF YAVAPAI

|  |  |
|---|---|
|  |  |
| **DANIEL T. DORIA,**<br><br><br><br><br>Plaintiff,<br><br><br><br>v.<br><br><br><br>**COTTONWOOD SPRINGS RV LLC**, an Arizona Limited Liability Company; **HAPPY JACK LODGE, LLC**, a foreign Limited Liability Company; and **JOHN DOES I-X**,<br><br><br><br><br><br>Defendants. | **CASE NO. S1300CV202580488**<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (LIABILITY)**<br><br><br><br><br><br><br><br>(Assigned to:The Honorable Judge Linda Wallace |

## I. INTRODUCTION

Plaintiff Daniel T. Doria moves for Partial Summary Judgment on the issue of liability pursuant to Ariz. R. Civ. P. 56. There is no genuine dispute as to any material fact concerning the unlawfulness of Defendants' attempted eviction and related conduct. The undisputed record—consisting of the written lease, Defendants' disclosures, and sworn admissions by Defendants' General Manager, Julie Pendergast, at the December 29, 2025 evidentiary hearing—establishes that Defendants:

1. Issued multiple eviction notices under a statute that does not apply to this tenancy;

2. Attempted to terminate Plaintiff's tenancy for conduct expressly authorized by the lease; and

3. Lacked any evidence to support allegations of an "immediate" health or safety hazard or criminal activity.

As a matter of law, these undisputed facts establish Defendants' liability for Breach of Contract and for Unlawful Retaliation prohibited by the Arizona Recreational Vehicle Long-Term Rental Space Act ("RV Act"), A.R.S. §§ 33-2101–2148. Only the issue of damages remains for trial.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Governing Law: Plaintiff resides in a recreational vehicle and has occupied a space at Defendants' RV park for more than 180 consecutive days. During cross-examination, General Manager Julie Pendergast admitted that Plaintiff lives

in an RV and has done so for a duration exceeding 180 days. *(Hearing Testimony of J. Pendergast, Dec. 29, 2025)*. This tenancy is therefore governed exclusively by the RV Act, A.R.S. §§ 33‑2101–2148.

2. Written Lease Authorization: The parties' written lease (Exhibit A) contains a handwritten, initialed modification stating: "Lessee babysits up to 4 dogs @ one time typically 1–2." Ms. Pendergast examined Exhibit A on the stand and confirmed the existence of this handwritten provision and the documents mutual signature by former manager, Marina Henkins. *(Id.)*.

3. No Revocation of Lease Term: When asked, *"Can you point to any document where I agreed to remove this authorization prior to November 2025?"*, Ms. Pendergast answered under oath: "No." *(Id.)*.

4. Basis for Termination (The "Policy" Admission): Ms. Pendergast admitted under oath that the "Immediate Notice" was issued because Plaintiff was "babysitting numerous dogs." When confronted with the fact that the lease authorizes this, she testified: "Because we do not permit that under our current policies and leases." *(Id.)*. This constitutes an admission that Defendants attempted to enforce a unilateral policy change over an existing contract term.

5. Statutorily Defective Notice: On November 20, 2025, Defendants served Plaintiff with an "Immediate Notice to Move" (Exhibit C). Ms. Pendergast admitted on the stand that Exhibit C cites A.R.S. § 33-1368(B), a provision of the Arizona Residential Landlord and Tenant Act, not the RV Act. *(Id.)*.

6. No Evidence of Immediate Hazard: Despite issuing an "Immediate" notice based on alleged health hazards and "accosting staff," Ms. Pendergast admitted the following facts under cross-examination:

- Regarding Dog Feces: When asked to produce a single written warning sent to Plaintiff regarding dog feces between March and October 2025, she answered that only one resolved warning existed.

- Regarding Staff Safety: When asked to produce a single incident or police report regarding Plaintiff "accosting staff" prior to the eviction notice, she answered: "None was filed…to avoid wasting resources" *(Id.)*.

## III. ARGUMENT

A. The Eviction Notice Was Void *Ab Initio* Because It Cited an Inapplicable Statute

Arizona eviction statutes are strictly construed. The Residential Landlord and Tenant Act expressly does not govern RV tenancies subject to the RV Act. A.R.S. § 33-2101. Defendants nevertheless issued an "Immediate Notice to Move" under A.R.S. § 33-1368(B). Ms. Pendergast admitted under oath that the notice cited the Residential Act despite Plaintiff's status as a long-term RV tenant. A termination notice issued under an inapplicable statute is legally ineffective. Because the notice was void, Defendants had no lawful basis to threaten eviction or lockout.

B. Defendants Breached the Lease by Attempting to Evict Plaintiff for Expressly Authorized Conduct Under Arizona law, contracts are enforced according to their plain

terms. The lease here explicitly authorizes Plaintiff to pet‑sit up to four dogs. Defendants

admitted that this activity was the actual basis for the attempted termination. Crucially,

Ms. Pendergast admitted that the eviction was driven by "current policies," despite

acknowledging that the Plaintiff never signed a document revoking his lease

authorization. Attempting to evict a tenant for conduct expressly permitted by the

controlling lease constitutes a Material Breach of Contract as a matter of law. Defendants

cannot unilaterally impose a "policy" that overrides a written contract term.

C. Defendants' Conduct Constitutes Retaliation Under A.R.S. § 33‑2148 The RV Act

places the burden on the landlord to prove "good cause" for eviction once a tenant raises

a retaliation defense. A.R.S. § 33-2148(B). Here, Defendants cannot meet that burden

because their "cause" was fabricated. Ms. Pendergast's testimony confirms that:

1. The alleged "immediate hazard" (feces/violence) was unsupported by any written
   warnings or incident reports.

2. The true motive was the pet-sitting, which was authorized by the lease.

3. The alleged "verbal abuse" occurred after the Plaintiff received the illegal notice,
   as Ms. Pendergast confirmed the timeline during examination. A landlord cannot
   establish "good cause" where the asserted basis is unsupported by evidence and
   the underlying motive is to punish a tenant for exercising contractual rights.
   Accordingly, Defendants' conduct constitutes unlawful retaliation.

IV. CONCLUSION

There is no genuine dispute as to any material fact. Defendants' General Manager admitted under oath that the eviction notice cited the wrong statute, admitted that Plaintiff's lease authorized the conduct used as the basis for eviction, and admitted they possess no evidence of any immediate health or safety hazard to support the "Immediate" termination. Under Arizona law, these undisputed facts establish Defendants' liability for Breach of Contract and Unlawful Retaliation. Plaintiff respectfully requests that the Court grant Partial Summary Judgment in his favor on the issue of liability and set the matter for further proceedings solely on the issue of damages.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2025, a true and correct copy of the foregoing document was served electronically via email to:

**Brittney K. Walsh, Esq.** H & M LAW, PLLC
court@hmlawfirmaz.com *Attorney for Defendants*
brittney@hmlawfirmaz.com

---

**/s/ Daniel T. Doria**
**Daniel T. Doria**

# EXHIBIT G

# EXHIBIT G

Brittney K. Walsh, Esq.
State Bar No. 035279
**H & M LAW, PLLC**
P.O. Box 3700
Cottonwood, Arizona 86326
(928) 554-2070 office
(928) 438-0866 fax
court@hmlawfirmaz.com

Attorneys for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA, <br><br> Plaintiff, <br><br> Vs. <br><br> COTTONWOOD SPRINGS RV, LLC, and HAPPY JACK LODGE, LLC <br><br> Defendants. | Case No.  S1300CV202580488 <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> (Hon. Linda Wallace) |

COMES NOW Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC ("HJL"), by and through counsel undersigned, pursuant to Rule 56, Ariz. R. Civ. P. ("Rule/Rules") and submits its Response to Plaintiff Daniel Doria's ("Doria") Motion for Partial Summary Judgement ("PMSJ"). Doria has failed to identify genuine issues of fact that entitle him to Summary Judgement.

HJL also submits its Cross-Motion for Summary Judgment. This Response and Cross-Motion is supported by the attached memorandum of law and the accompanying Statement of Facts (hereafter "SOF").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PROCEDURAL AND FACTUAL HISTORY**

Plaintiff's PMSJ seeks a determination of liability on the following claims brought: Breach of Contract and Retaliation.

On December 29, 2025, this Court held an evidentiary hearing on the preliminary injunction ("The Hearing") and dismissed the relief Plaintiff requested. Finding, "Plaintiff has not shown a strong likelihood of success on the merits nor probable success on the merits as the court received testimony related to the allegations of pet waste, verbal abuse of staff by Plaintiff, Plaintiff's notice of a move out date, etc." *See* Ruling dated January 5, 2026. Doria ignores the Court's Ruling and asserts arguments based on disputed fact to seek liability on his claims. This request cannot be granted.

The evidence presented at The Hearing provides genuine issues of material fact defeating his Motion. As outlined below, Plaintiff's Motion for Summary Judgement must be denied. HJL, however, is entitled to Summary Judgement on all causes of action in the First Amended Complaint ("FAC").

**A.    There Is No Breach Of Contract And Therefore Liability Cannot Be Established**

The parties agree that Doria and HJL entered into a short-term lease on March 10, 2025. SOF ¶ 7. The undisputed evidence shows the lease ended on June 9, 2025. SOF ¶ 7. Thereafter, Plaintiff continued as a month-to-month tenant. As alleged by Plaintiff in his First Amended Complaint ("FAC"), and as demonstrated by the evidence and Doria's under oath admissions, HJL sought a new lease from all residents, including Doria. SOF ¶¶ 9-12. Both Doria and corporate representative Julie Pendergast testified at The Hearing that Doria refused to sign a new lease. The undisputed evidence shows Doria engaged in a series of activities in breach of his lease and HJL sought to terminate his tenancy.

After two months of back-and-forth communication, Doria terminated his residency in writing. SOF ¶¶ 19-21. On November 25, 2025, Doria issued a notice to HJL that he would be terminating his residency stating,

1) My move out date is January 9, 2026. 2) Rent is paid through Jan 9, but power is not and I am responsible for power through move out. 3) If move out occurs prior, a pro-rated refund if a credit balance exists, will take place in a reasonable period of time.
SOF ¶ 21.

Doria issued a written, voluntary termination, which Defendants accepted in writing. SOF ¶¶ 21 and 22. Because Plaintiff voluntarily sent termination notice (SOF ¶ 21), he cannot meet the standard of breach of contract.

Plaintiff fails to allege – much less show through undisputed evidence – a legally cognizable breach. His Motion alleges the following actions as breaches (HJL's responses are *italicized*):

- That J. Pendergast agreed the manager initialed the handwritten provision allowing Doria to babysit dogs. Motion at p. 3 ¶ 2.

*This admission never happened. However, if she did make such an admission, the plain face of the lease shows <u>one party initialed the lease: Doria</u>. As such, this fact is disputed. Moreover, testimony and evidence show that Doria was notified of numerous lease violations. Ultimately, he was evicted based on the mutual agreement to terminate the lease*. SOF ¶¶ 21 and 22.

- That the eviction notice was defective for failing to cite the Arizona Recreational Vehicle Long-Term Rental Space Act ("The RV Act").

*One eviction notice was issued prior to Doria's termination. Such notice was never acted on.* SOF ¶ 18. *Five days later, Doria terminated his tenancy in writing.* SOF ¶ 21. *Thus the statute cited in the eviction notices are immaterial.*

On January 21, 2026, the parties appeared before the Justice Court regarding the eviction. The court heard testimony about duress and retaliation and found that Doria's written notice was controlling. SOF ¶ 33. The court entered Judgment against Doria. SOF ¶ 35. Plaintiff's Partial Motion for Summary Judgment for liability must be dismissed as the Justice Court has adjudicated the eviction pursuant to the lease.

///

Doria's PMSJ does not adequately show facts to establish breach of contract/lease. Doria's PMSJ also fails to show undisputed evidence to establish causation and damages. Nor could he. On November 25, 2025, Doria terminated his tenancy. (As argued below, he is estopped from asserting that his termination was issued under duress and therefore not controlling.) He cannot show causation or damages. His PMSJ fails for this reason.

Requiring residents to sign a lease complying with park policies is not a breach of contract. Doria's unsupported allegations fail to state a cognizable claim for relief, much less show undisputed fact entitling Doria to summary judgment on any element.

Doria's November 25, 2025, termination notice severed any causation of damages. Further, even if Doria's unsupported allegations were correct that the November 20, 2025, eviction notice was wrongful (it wasn't), a landlord is within its rights to terminate a holdover tenancy. A.R.S. § 2147(B). The statute cited by HJL would not change the analysis. Doria was a holdover tenant who terminated of his lease in writing. Because of the evidence introduced at the preliminary injunction hearing, and the determination made by the Justice Court, Doria cannot plausibly establish any undisputed facts to show causation of damages. The law does not create liability for costs from moving under these facts.

Doria's PMSJ for liability on Breach of Contract claim must be dismissed as there is genuine dispute of material facts. Moreover, the undisputed facts <u>do</u> <u>not</u> give rise to a breach of contract claim.

**B.      There Is No Protected Activity Under A.R.S. § 33-2148 (A)(1)-(4) And Therefore Liability Cannot Be Established**

Doria fails to provide evidence to show the necessary triggering actions under A.R.S. § 33-2148 ("Protected Activity") to claim retaliation. Doria's PMSJ asserts "[Defendants] Attempted to terminate Plaintiff's tenancy for conduct expressly authorized by the lease." PMSJ at p. 2. This misstates the undisputed evidence wherein emails and eviction notices state a plethora of reasons that HJL sought to terminate his tenancy. Additionally, testimony presented at the December 29, 2025, ("The Hearing") creates issues of fact that defeat his PMSJ.

The Court noted this evidence in its January 5, 2025, Ruling. ("[T]he court received testimony related to allegations of pet waste, verbal abuse of staff by Plaintiff, Plaintiff's notice of a move out date, etc.") Because the undisputed facts contradict the story Doria's PMSJ tells, his PMSJ must be denied.

Further, Doria asks this Court to determine liability for Retaliation but fails to show any evidence of the elements of retaliation. Doria admitted under oath that he did not engage in the elements under A.R.S. § 33-2148 (A)(1)(3) and (4). SOF ¶¶ 26 and 27.

Doria alleges the "Protected Activity" under § 33-2148 (A)(2), as memorialized in emails, is Doria asserting rights that do not exist. SOF ¶¶ 10-13. His emails show that he was asserting language under the statutes that simply does not exist. SOF ¶ 10-13. The undisputed facts show that Doria did not engage in the requisite Protected Activity, and he cannot establish liability for Retaliation.

Doria's PMSJ misstates the evidence and testimony presented. He argues that the evidence shows that the evictions were solely because of his dog sitting. However, the plain face of the emails and eviction notices do not agree with this conclusion.

First, HJL warned all residents that an increase in rent and potential eviction would result if the residents failed to comply with updated leases and applications. HJL's actions were not targeted at Doria and predate his assertion of a made-up law. Second, Doria's testimony admits he was verbally abusive with staff. This sexist and aggressive language led to the November 20, 2025, eviction notice. This is undisputed. Five days later, Doria wrote to HJL that he would vacate on January 9, 2026. Finally, Doria provided a written notice to terminate upon which HJL relied for his eviction. He did not appeal this judgment. He is estopped from arguing HJL could not rely on his written termination.

The testimony and evidence also show that the staff gave Doria numerous verbal and written warnings for failure to comply with numerous park rules. *See, e.g.* SOF ¶¶ 22 and 24. The PMSJ relies on disputed evidence and an ahistorical narrative that ignores the plain face of the written evidence. The timeline and undisputed evidence simply does not support his PMSJ.

The closest Doria comes to meeting the retaliation's required "Protected Activity" are the standards set forth in A.R.S. § 33-2148(A)(2) ("The tenant has complained to the landlord of a violation under this chapter.") Doria's emails show that the "rights" he asserted do not exist. SOF ¶¶ 10-13. This is not enough to trigger the retaliation statute.

As such, his PMSJ on retaliation must be dismissed as there is genuine dispute of material fact that warrants dismissal in Doria's favor.

## II.    LEGAL STANDARDS FOR HJL'S SUMMARY JUDGMENT

### A.    Arizona Rules Of Civil Procedure 56 ("Rule 56") Warrant Dismissal Of All Doria's Claims

Ariz. R. Civ. P. Rule 56(a) states in part: "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Here, Doria's Motion presents disputed evidence as undisputed and his Motion warrants dismissal.

### B.    Evicting A Tenant Based On Written Notice To Vacate Is Not A Breach Of Contract

A breach of contract claim requires: (1) the existence of a contract; (2) breach; and (3) resulting damages. *City of Chandler v. Roosevelt Water Conservation Dist.*, 258 Ariz. 403, 412, 559 P.3d 184, 193 (Ct. App. 2024), *review granted* (Apr. 1, 2025) *citing First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353 ¶ 22, 372 P.3d 292, 297 (2016).

Because Doria's termination was adjudicated in Justice Court, he is estopped from seeking a different outcome in this Court. "Generally, the elements of collateral estoppel are: the issue was actually litigated in the previous proceeding; there was a full and fair opportunity to litigate the issue; resolution of the issue was essential to the decision; there was a valid and final decision on the merits; and there is common identity of the parties." *Irby Const. Co. v. Arizona Dep't of Revenue*, 184 Ariz. 105, 107, 907 P.2d 74, 76 (Ct. App. 1995).

///

///

**C.    Doria Admitted He Did Not Engage In The Protected Activity Required Under The Statute To Prove Retaliation**

A.R.S. § 33-2148. Retaliatory conduct prohibited; eviction

A. Except as provided in this section, a landlord shall not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for eviction after any of the following:
1. The tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation that applies to the premises and that materially affects health and safety.
2. The tenant has complained to the landlord of a violation under this chapter.
3. The tenant has organized or become a member of a tenants' union or similar organization.
4. The tenant has filed an action seeking relief pursuant to section 33-2107 or has filed any other action against the landlord in an appropriate court.
B. If the landlord acts in violation of subsection A of this section, the tenant is entitled to an amount equal to two months' periodic rent and twice the actual damages sustained by the tenant and has a defense in action against the landlord for eviction, unless the landlord proves good cause for the landlord's action.

**III.    ARGUMENT FOR GRANTING HJL'S SUMMARY JUDGMENT**

**A.    Doria Is Estopped From Arguing The Eviction Notices Were Improper Or That He Terminated Under Duress**

On January 12, 2026, HJL filed a Complaint for Eviction Action in the Justice Court. SOF ¶ 28. On January 21, 2026, the parties appeared before the Justice Court on an eviction action. SOF ¶ 31. The Court considered the evidence and Doria presented testimony for his claims and defenses. However, the Justice Court entered judgment against him. SOF ¶ 35.

The Judgment states, "After inquiry by the Court, the Court finds that [Doria] has no legal basis or defense for the failure to leave the property." Doria did not appeal the Judgment and has vacated the premises. *Id*.

As such, Doria's defenses regarding eviction against HJL have been tried and he is estopped from asking this Court to make a new determination of his rights. *See Irby Const. Co. v. Arizona Dep't of Revenue*, *supra*.

///

Estoppel is established here. The Justice Court considered the lease, eviction notices, and Doria's termination notice. Doria was given the chance to present his defenses for his failure to vacate on January 9, 2026. The issues presented in the Justice Court are the same issues presented here and between the same parties before the Justice Court. The Court made a final decision that Doria had "no legal basis or defense for the failure to leave the property." Doria did not appeal, and the decision is final.

Moreover, according to Doria's under oath filings, the Federal Complaint, Superior Court Complaint and the issues presented to the Justice Court are duplicative. SOF ¶¶ 29 and 36. On January 14, 2026, Doria sought to remove the Justice Court proceedings to Federal Court alleging federal question and admitting, "This eviction action arises from the same nucleus of apparatus facts as the currently pending federal litigation in [the Justice] court." SOF ¶ 29. On January 19, 2026, Doria sought to abandon his claims in this Court by improperly filing a Notice of Voluntary Dismissal ("Notice") under Arizona Rules of Civil Procedure Rule 41(a)(1)(A)(i). SOF ¶ 36. His Notice admits "Plaintiff has incorporated the claims regarding retaliation and violations of the Arizona RV Long-Term Rental Space Act into his active Federal Lawsuit," and the Federal case is "duplicative litigation" to the issues before this Court. *Id*. Thus, the three actions involving Doria and HJL are all duplicative. The Justice Court's Judgment bars further pursuit of the Superior Court claims for breach of contract.

Doria vacated the property on or about January 23, 2026. "According to the Restatement (Second) of Judgments § 13 (1982), a 'final judgment' for purposes of issue preclusion 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 224, 62 P.3d 966, 969 (Ct. App. 2003). The Justice Court conclusively decided that Doria's written termination of tenancy required him to vacate the premises, he is precluded from seeking a different outcome in another Court. There is no breach.

///

///

Because the Justice Court determined that Doria's notice to vacate was controlling, he is estopped from arguing otherwise in this Court. Doria's MPSJ on liability cannot be granted.

Doria cannot establish breach or causation. HJL is entitled to Summary Judgment dismissing his breach of contract claims as the issue has been adjudicated.

B.     **The Causes Of Action Presented In Plaintiff's First Amended Complaint Are Moot**

As discussed above, the Justice Court considered arguments regarding Doria's duress arguments. SOF ¶ 32. The Court was not persuaded. SOF ¶ 33. Judgment was entered against Doria. SOF ¶ 35. Thereafter, Doria did not appeal. The issue is moot.

Doria vacated the property on or about January 23, 2026. Thus, there is no longer a live controversy to consider. *See Fraternal Ord. of Police Lodge 2 v. Phoenix Emp. Rels. Bd.*, 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982) *citing Mesa Mail Publishing Co. v. Board of Supervisors*, 26 Ariz. 521, 227 P. 572 (1924); *and Camerena v. Department of Public Welfare*, 106 Ariz. 30, 470 P.2d 111 (1970). Doria was required to vacate due to his own writing.

At the January 21, 2026, eviction hearing, Doria admits the eviction issue is moot because he planned a move-out. SOF ¶ 34. He has since vacated. Even Doria's testimony admits mootness.

Because there is no live controversy or case due to the Justice Court's Judgment, Doria's Motion for Partial Summary Judgment on liability cannot be granted. HJL is entitled to dismissal of the breach of contract claim.

C.     **Evicting A Tenant Based On Their Written Termination Of Tenancy Is Not A Breach Of Contract**

Because the Justice Court determined that Doria's termination notice is controlling and cause for his eviction, Doria cannot establish breach, causation, or damages in this Court. His breach of contract claim must be dismissed.

///

The Justice Court heard Doria's arguments regarding the evidence and determined that the email communication between Doria and HJL required Doria to vacate on January 9, 2026. SOF ¶ 33. Because of this determination, Doria's own writing was the basis for his eviction and HJL did not breach.

Doria also presented testimony to the Justice Court that his written notice of termination was made under duress. The Court rejected those arguments. SOF ¶ 33. In other words, Doria submitted a termination of his tenancy, and it was his actions that gave rise to the eviction. Thus, it is impossible to find that HJL breached the lease or is liable for damages. There is no breach of contract for seeking to evict Doria in reliance on his written termination.

Moreover, even if Doria could establish a breach (which he cannot), he similarly cannot show causation and damages. The cause of Doria's "damages" (i.e. the costs of moving) are due to his own writing wherein he stated he would move out by January 9, 2026. *See* SOF 21. Because Doria terminated the lease and promised a moveout date of January 9, 2026, HJL cannot be held liable for Doria's actions. Because Doria's written notice to vacate gave rise to an eviction, Doria's MPSJ on liability must be denied. Summary Judgment dismissing the breach of contract is warranted.

There is no breach of contract here. Doria wrote to his landlord that he would move, a court held this written notice is controlling, and determined he is required to vacate. There is no dispute of fact that would allow Doria to prevail as a matter of law. His breach of contract claim must be dismissed.

### D.    There Is No Retaliation Without The Protected Activity Contemplated In The Statute

A.R.S. § 33-2148(A) contemplates certain protected activity in which Plaintiff must take for a Court to find retaliation. Doria does not show undisputed evidence of such Protected Activity. In fact, the undisputed facts show that HJL sought new leases and background checks from all residents (SOF ¶ 9), Doria emailed HJL refusing to comply (SOF ¶ 10), and Doria asserted rights that do not exist under the law. These facts are established through the undisputed emails.

At the December 29, 2025, preliminary injunction hearing, Doria testified that he did not make any reports to a governmental agency about building violations per A.R.S. § 33-2148(A)(1). *See* SOF ¶ 23. He testified that he never attempted to unionize per A.R.S. § 33-2148(A)(3). *See* SOF ¶ 23. And he testified that the threat to his utilities under A.R.S. § 33-2148(A)(4) were the eviction notices from HJL. *See* SOF ¶ 23. This is not enough under the statute.

A.R.S. § 33-2148(A)(4) incorporates A.R.S. § 33-2107 by reference. Subsection (I) states,

> If a tenant believes that a landlord is not in compliance with this section, the tenant shall provide written notice to the landlord regarding the alleged violation of this section. If the dispute is not resolved within thirty days after the notice is received by the landlord, the tenant may file a civil complaint in justice court to enforce this section. In an action pursuant to this subsection, the court shall award the prevailing party court costs and reasonable attorney fees.

First, no such notice about utilities was sent to HJL. Mere threat of eviction does not meet the standards set forth in A.R.S. § 33-2148(A)(4) and A.R.S. § 33-2107.

Second, Doria's testimony is that the "notice" were the eviction notices from HJL. Doria never furnished a notice regarding utilities before he terminated his tenancy in writing on November 25, 2025. Doria's testimony is that the utilizes violation are an eviction notice and two notices showing mutual assent that Doria vacate on January 9, 2026, in reliance on Doria's email. This is not the "notice" required under the statute, or the requisite violations contemplated in A.R.S. § 33-2107. Taking Doria's arguments to their logical extension, any eviction notice by a landlord is a violation of A.R.S. § 33-2107 and subjects the landlord to retaliation. This is absurd.

Moreover, A.R.S. § 33-1241 has a notice requirement with which Doria failed to comply.

> Except as otherwise provided by law, if there is a material noncompliance by the landlord with the rental agreement or the rules, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate on a date not less than

thirty days after receipt of the notice if the breach is not remedied in fourteen days. If there is a noncompliance by the landlord materially affecting health and safety, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate on a date not less than twenty days after receipt of the notice if the breach is not remedied in ten days.

*See* A.R.S. § 33-1241(A). Doria never provided notice in accordance with The RV Act.

More importantly, the "material noncompliance" Doria asserted via email on September 24 and 25 is fabricated language under A.R.S. § 33-2132(B). SOF ¶¶ 10-13. He asserted to HJL, "A rule or regulation adopted by the landlord after the tenant enters into the rental agreement is not valid unless the tenant consents to it in writing." SOF ¶ 10. This language does not exist in The RV Act. Even if Doria had complied with the Notice requirement under A.R.S. § 33-1241(A) ( he did not), the "noncompliance" he asserted was a fabrication.

Doria testified that his Protected Activity was asserting his "rights" to HJL per A.R.S. § 33-2148(A)(2). *See, e.g.* SOF ¶¶ 26 and 27. *See also* FAC at ¶ 8. However, the "rights" he asserted do not exist under Arizona law. Doria repeatedly cited language in the law that does not exist SOF ¶¶ 9, 10, and 11. A party cannot make up law and assert they have rights under the fictional laws they created.

On September 24, 2025, HJL sought a new application, background check and updated lease from all residents. SOF ¶ 9. Such notice warned that failure to comply with the application and background check would "result in full rate and eviction." *Id*. Thereafter, Doria replied and asserted rights that do not exist. SOF ¶10. HJL's request of all residents predates Doria's assertion of fabricated rights under the RV Act. Finally, HJL's threat of eviction and/or raising rent happened before Doria asserted fabricated legal rights. This is not retaliation.

The undisputed evidence shows that HJL emailed all residents seeking compliance with a revised application process; HJL sought background checks and new leases. SOF ¶ 9. The request was not singularly directed at Doria. Doria opposed compliance (SOF ¶¶ 10,

12, 13, 14, 16) in violation of the plain language in his lease. SOF ¶ 7. The emails show that Doria's assertion of "rights" was merely a refusal to comply with a background check and signing a new lease. However, these are not rights enumerated by The RV Act. As such, the undisputed evidence shows that Doria did not assert rights pursuant to A.R.S. § 33-2148(2).

A plaintiff who erroneously believes the law forbids a landlord from seeking lease terms complying with park policies when the law does not in fact forbid such requests has no retaliation claim if he opposes that and gets evicted. Thus, a plaintiff may not use a legally erroneous belief to expand the statute beyond the categories of protection addressed by the legislature. *See* A.R.S. § 33-2148(2)("The tenant has complained to the landlord of a violation under this chapter.") (emphasis added). According to the face of Doria's emails, he asserted language not found in the statute and rights that do not exist. This is not the requite Protected Activity contemplated by the statute. Doria cannot show evidence for the Protected Activity under A.R.S. § 33-2148(A)(2) and his retaliation claims must be dismissed.

The same goes for a plaintiff who voluntarily terminates their lease, and the landlord relies on their written termination. The notices furnished by HJL after Doria's written November 25, 2025, notice of termination evince mutual assent of his termination. *See* SOF ¶¶ 19 and 21. As such, any deficiencies or failures to cite to the correct statute are immaterial. HJL relied on Doria's emails to evict him and successfully obtained judgment against him in Justice Court.

HJL attempted to execute a new lease with Doria (and all other residents), which is required by the expired lease. SOF ¶ 7. Doria refused to sign a new lease citing a law that does not exist, any resulting eviction is not retaliation as contemplated by the statute. Eviction is a natural result of Doria's written termination. As such, the timeline of undisputed facts shows that no retaliation occurred. This case of action warrants dismissal.

**WHEREFORE**, Defendant prays for relief against Plaintiff as follows:

1.    That Plaintiff's claims be dismissed with prejudice as there is no issue of genuine, material, disputed fact that gives rise to a cause of action;

2.     That Defendant be awarded its costs and attorneys' fees pursuant to A.R.S. § 12-349(A)(1), (2), and/or (3);

3.     That Defendant be awarded its costs and attorneys' fees pursuant to A.R.S. § 12-341.01;

4.     That pre- and post-judgment interest be awarded to Defendant on all amounts from the date judgment is entered until paid in full; and

5.     Any other relief deemed just by this Court.

Respectfully Submitted this 6th day of May, 2026.

**H & M LAW, PLLC**


By: _/s/ Brittney K. Walsh_
     Brittney K. Walsh, Esq.
     Attorneys for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC


The foregoing e-filed and e-served
this 6th day of May, 2026, to:

Daniel T. Doria
989 S. Main St Ste A PMB 407
Cottonwood, AZ 863236
danieldoria105@yahoo.com
*Plaintiff Pro Se*

COURTESY COPY emailed to:

Hon. Linda Wallace
Yavapai County Superior Court
ptb@courts.az.gov

By:_ _/s/ Kristie Kellerhals_

# EXHIBIT H

# EXHIBIT H

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
04/22/2026  2:33PM
BY: JHARSHMAN
DEPUTY

## SUPERIOR COURT, STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA,<br><br>    Plaintiff,<br><br>vs.<br><br>COTTONWOOD SPRINGS RV, LLC,<br><br>    Defendant. | Case No.  S1300CV202580488<br><br><br>**ORDER** |

| | |
|---|---|
| **HONORABLE LINDA WALLACE** | **BY:** Melissa Crouse, Judicial Assistant |
| **DIVISION PRO TEM B** | **DATE:** April 22, 2026 |

The Court reviewed the *Notice of Voluntary Dismissal without Prejudice* filed January 19, 2026, *Defendant's Objection to Plaintiff's Notice of Voluntary Dismissal* filed February 13, 2026, *Plaintiff's Response to Defendant's Objection to Voluntary Dismissal and Alternative Motion for Dismissal Under Rule 41(a)(2)* filed February 17, 2026, the *Response to Plaintiff's Alternative Motion for Dismissal Under Rule 41(A)(2)* filed March 24, 2026, and *Plaintiff's Reply ISO Rule 41 Dismissal* filed March 25, 2026.

**IT IS ORDERED** *Defendant's Objection to Plaintiff's Notice of Voluntary Dismissal* filed February 13, 2026 is granted.  Plaintiff inappropriately filed a Notice rather than a Motion under Rule 41.

**IT IS FURTHER ORDERED** the *Alternative Motion for Dismissal* is denied.  However, the Court does not base its ruling on the vexatious litigant argument as federal judges have inherent power to make such rulings.

The Court notes that the inappropriately filed Notice of Voluntary Dismissal caused the Clerk's Office to reject certain filings in this matter.

**IT IS THEREFORE ORDERED** directing the Defendant to file a Response to *Plaintiff's Motion for Partial Summary Judgment* and the *Plaintiff's Motion for Clarification of Ruling dated January 5, 2026* with the response time beginning from today's date.

The Court reviewed *Plaintiff's Motion to Strike Improper Post-Closure Filings* filed March 3, 2026, the *Response to Plaintiff's Objection to and Motion to Strike Defendant's*

Doria v Cottonwood Springs RV, LLC
S1300CV202580488
ORDER
April 22, 2026

*Improper Post-Closure Filings* filed March 10, 2026, and the *Response to Plaintiff's Motion to Strike Improper Post-Closure Filings* filed March 30, 2026.

**IT IS ORDERED** *Plaintiff's Motion to Strike Improper Post-Closure Filings* is denied. Plaintiff's improperly filed Notice of Dismissal is not grounds for striking and Plaintiff's Good Faith Consultation Certificate is deficient.

The Court reviewed the *Emergency Notice of Supplemental Authority re Defendant's Reply in Support of Vexatious Litigant Motion* filed March 24, 2026, and *Defendant's Response to Plaintiff's Supplemental Authority re Defendant's Reply in Support of the Vexatious Litigant Motion* filed March 24, 2026.

**IT IS ORDERED** striking the *Emergency Notice of Supplemental Authority re Defendant's Reply in Support of Vexatious Litigant Motion* as an impermissible filing.

cc:    Daniel T. Doria – 989 S. Main Street Suite A PMB 407, Cottonwood, AZ 86326
       Brittney K. Walsh – H&M Law, PLLC (e)

2

# EXHIBIT I

# EXHIBIT I

# JUSTICE COURT - VERDE VALLEY PRECINCT, YAVAPAI COUNTY, ARIZONA

10 South Sixth St, Cottonwood, AZ 86326                    Phone Number (928)639-5820

| | |
|---|---|
| COTTONWOOD SPRINGS RV, LLC, AND HAPPY JACK LODGE LLC **Plaintiff,** vs DANIEL DORIA, **Defendant.** | **Case No:** CV2026000011 **JUDGMENT** (Special Detainer / Forcible Detainer) ☐ **Stipulated** (see pg. 2*) _____ _____ |

This cause came on regularly for hearing before the Court, sitting without a Jury on **January 21, 2026**.

Plaintiff was ☐ present Pro Per  ☐ not present  ☒ represented by Counsel _Brittany Walsh_  ☐ appeared telephonically/virtually.

Defendant, **Daniel Doria** was ☒ present Pro Per  ☐ not present  ☐ appeared telephonically/virtually.

The Court proceeded to receive sworn evidence, both oral and documentary, in support of the Plaintiff(s) complaint, filed in this Court, **January 12, 2026**. The evidence being closed, the case was submitted to the Court for consideration and decision.

The Court, having duly considered the evidence, and being fully advised in the premises, finds and concludes that each and all of the allegations contained in the Plaintiff(s) complaint, which are hereby incorporated into this Judgment by reference, are true, and that the Plaintiff(s) is/are entitled to the relief requested.

Additional findings (if any) _After inquiry by the Court, the Court finds that Defendant has no legal basis or defense for the failure to leave the property._

**WHEREFORE IT IS ORDERED, ADJUDGED and DECREED** that the Defendant(s) is/are guilty of ☐ Special Detainer ☒ Forcible Detainer, and that possession of the following described real property, to wit, **420 Happy Jack Way #177, Cottonwood, Yavapai County, Arizona,** shall be restored by the Defendant(s) to the Plaintiff(s) on or before **January 21, 2026.**

IT IS FURTHER ORDERED that the Plaintiff(s) shall have Judgment against the Defendant(s) in the sum of $ _0_ for rents, plus late charges in the amount of $ _0_. _0_.

IT IS FURTHER ORDERED that the Plaintiff(s) shall have Judgment against the Defendant(s) for Court costs in the amount of $ _94⁰⁰_.

IT IS FURTHER ORDERED that the Plaintiff(s) shall have Judgment against the Defendant(s) in the sum of $ _500⁰⁰_ for Attorney fees incurred in this matter.

1

IT IS FURTHER ORDERED that a Writ of Restitution may issue:

■ at the expiration of five (5) calendar days from the date of this Judgment or, **January 27, 2026**.

The prevailing party shall file a Satisfaction of Judgment when Judgment has been paid in full. Interest accrues at the rate of **7.75%** per annum from the date of Judgment.

DATED:  January 21, 2026

_____
**HON. DAVID P GORDON**
**JUDGE OF THE JUSTICE COURT**

Copies given/mailed this date to:

Plntf or Plntf's Attorney ☒ Hand given 1/21/2026 ☐ E-Mailed _____ ☐ Mailed_____
Deft(s) or Plntf for Deft(s) on Default Judgments ☑ Hand given 1/21/2026 ☐ Mailed_____
GUIDE: Your Right To Appeal provided ☑ Hand given 1/21/2026 ☐ Mailed _____

By: _____

*****STIPULATED**: Read Carefully! By signing above, you are consenting to the terms of the judgment against you. You may be evicted as a result of this judgment, the judgment may appear on your credit report, and you may NOT stay at the rental property, even if the amount of the judgment is paid in full, without your landlord's express consent.

WARNING: After service of the Writ of Restitution, if you remain on or return to the property, you will have committed criminal trespass in the third degree and could be prosecuted.

2

# EXHIBIT J

# EXHIBIT J

YAVAPAI COUNTY

VERDE VALLEY JUSTICE COURT

COTTONWOOD SPRINGS RV, LLC; HAPPY )
JACK LODGE, LLC,                   )
                                   )
                  Plaintiffs,      )
                                   )Case No.
vs.                                )J1302CV2026000011
                                   )
DANIEL DORIA,                      )
                                   )
                  Defendant.       )
_____    )
                         ____

TRANSCRIPTION OF AUDIO RECORDING

EVIDENTIARY HEARING

JANUARY 21, 2026

BEFORE THE HONORABLE DAVID P. GORDON

Transcribed by:      Ashlee Mangum
                     Registered Professional Reporter
                     Certified Reporter #50612

(The recording begins.)

THE COURT:  All right.  We are on the record.

Actually, hang on a second.  I forgot something.  I'll be right back.  Remain seated, please.

(Indiscernible conversation.)

THE COURT:  All right.  So we are on the record in Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC versus Daniel Doria.  The case number is CV2026000011.  I do have parties present in the courtroom today.

Can I have counsel for the Plaintiff announce?

MS. WALSH:  Brittany Walsh on behalf of Happy Jack Lodge doing business as Cottonwood Springs.

THE COURT:  Okay.  And you have -- who do you have with you here today?

MS. WALSH:  I have here our corporate representative who is Julie Pendergast.

THE COURT:  Okay.  And I have Mr. Doria present.  Mr. Doria, good morning to you.

Do you want to come on up and have a seat at the table, sir?

MR. DORIA:  I can, Your Honor.

THE COURT:  Okay.  Fantastic.  And I'll note that I do have Mr. Doria present here today.

All right.  I did have a chance just to kind of review the file --

MR. DORIA:  Your Honor --

THE COURT:  -- just to kind of say where we're at and I'll get to the parties and get their input on the that.

MR. DORIA:  Your Honor, just for the record, I'm here as a special appearance only now that my case has been removed.  I just want to be here to --

THE COURT:  So your case has not been removed, sir.

MR. DORIA:  It has, Your Honor.

THE COURT:  It -- do you have an order from the Federal Court showing that it has been removed?

MR. DORIA:  I do not, Your Honor.

THE COURT:  Okay.  Then I will tell you eviction law is an exclusive state jurisdiction.  It's not a federal jurisdiction question.  Unless I have an order from the Federal Court ordering me to transfer this, it will stay here just so you're aware.

MR. DORIA:  The removal was received by the court on the 16th, and the set of facts is showing, Your Honor, that it was a federal question and it has been

removed.  Again, I'm here as a special appearance to be respectful to the court.

THE COURT:  That's fine.  I'm advising you, I know that you're telling me that it has been removed.  I'm telling you from the court's perspective it is an active case that we're going to handle today.

MR. DORIA:  I understand, Your Honor.

THE COURT:  Okay.  All right.  Thank you.

All right.  So having had a chance to take a look at what was filed with the court, I do see that a Complaint was filed.  I have reviewed the Complaint.  I've also had a chance to review the attachments that were included in the Complaint, that included the rental application and rental agreement.  It included email correspondences between the Plaintiff and the Defendant.  Also, a 30-day notice that was provided on November 25th of 2025, and then a second 30-day notice that was provided on December 9th, 2025.  I -- I reviewed all of those in preparation for today.

I also looked with regard to service.  I do find that service was made.  And so, I'll note also for the record that -- that the Defendant did file a notice of filing, notice of removal to Federal Court.  The court did receive that and the court also received the attached documentation which looks like it was filed

with the United States District Court; although, I don't have a confirmation that.  That appears to be the notice of removal of the civil action.

Let's just take a look here.  Okay.  The court did acknowledge that filing and took no action and kept the case on the calendar today.

As I understand the allegations, my understanding is is that the lease agreement was from basically March to June, that at some point in time there was communication -- the lease period continued over beyond that point, that there was some communication between Mr. Doria and the landlord in which there was an understanding that the lease arrangement would terminate on January 9th.

And then, I saw -- that seemed to appear to be confirmed by the notice that went out on the same day of the email correspondence, and then I saw that there was a second one that was sent back.

As I understand it -- and I'll just check first with counsel for Plaintiff, as I understand it, it's your client's position that the appropriate -- that your client received notice that there was an attempt to terminate, there was sort of a date set for that.  That was confirmed by email correspondences that your client provided the notice, and then January 9th came around

and Mr. Doria had not vacated.

Is that -- am I summarizing that correctly?

MS. WALSH:  That's correct, Your Honor.

THE COURT:  Okay.  All right.

And.  Mr. Doria, I know I don't have an answer filed from you.  I think my question for you is do you -- I guess, do you deny that those are the circumstances?  Is there a legal reason why you haven't vacated the premises?

MR. DORIA:  I do deny that those are the circumstances, Your Honor, and there is a legal reason why I haven't vacated the premises.

THE COURT:  Okay.  And I'm not going to dive into testimony right now.

MR. DORIA:  Sure.

THE COURT:  But can you at least give me an idea of what's the factual dispute and what's the legal dispute so I have an idea of what that is?

MR. DORIA:  The factual dispute is that the notice of move out was provided under duress as a result of the earlier notices to vacate, Your Honor, which were given without cause.

THE COURT:  Okay.  All right.  So if I understand correctly, if I hear what you're saying is that that notice that you received, I guess, in

particular if we're going to do it chronological at least that first one that was provided to you in November of 2025 was sent to you and that was because that was as a result of duress, or you agreed to that was as a result of duress; is that right?

MR. DORIA:  That was the second cause of duress.  The initial cause of duress causing communication took place in September of '24 when the RV park decided to terminate all of the leases of all of the tenants.

THE COURT:  Okay.  All right.  So -- so, all right, so I'm not too worried about the 2024 issue because really the only issue I'm worrying about today is they're essentially saying, "Hey, look" --

MR. DORIA:  September 24th, Your Honor --

THE COURT:  September.

MR. DORIA:  -- I apologize, of 2025.

THE COURT:  Of 2025.  Oh, of 2025.

So I guess my question essentially is that is it looks like I've got emails that say that, in October you're saying, "Look, if I'm out on the 9th of January, will you guys go ahead and prorate," stuff like that.  And my understanding is that there was an email that responded back that said, "Yes, we'll prorate for you."  And then you followed up with a confirmation

email saying, "Okay.  I'm confirming this.  If it's different from this, let me know."

And my understanding was that was that notice that you were -- you were going to be vacating and then they basically formalized that in a formal notice that went out to you on that same day.  I mean, that's what my understanding is that.

Are you saying that did not happen in that way?

MR. DORIA:  I'm saying that there are some very large legal factors that change the dynamics of what you just described, Your Honor, yes --

THE COURT:  Okay.  All right.

MR. DORIA:  -- actions on a part of the Plaintiff.

THE COURT:  All right.  I'm not trying to put words in your mouth.  But if I hear what you're saying is that factually that may not be in dispute, but from a legal standpoint there may be legal defenses that you have that you believe would prevent this from --

MR. DORIA:  No.  They are factual, there are absolutely factual disputes, Your Honor.

THE COURT:  Okay.  With regard to the notices?

MR. DORIA:  With regard to everything that

took place between the Plaintiff on September 25th of 2025 and everything that's taken place up until today, Your Honor.

THE COURT:  Okay.  And -- and so help me understand, what are -- what is your position as to what took place that would --

MR. DORIA:  Sure.

THE COURT:  -- mean that we shouldn't move forward with this?

MR. DORIA:  Well, first of all, I think a trial would be appropriate.  I don't think moving forward with an eviction based off the very, very limited discovery that we have would be appropriate, Your Honor.  What took place was -- and this eviction was about two letters.

THE COURT:  I'm sorry, just --

MR. DORIA:  Should I stop?

THE COURT:  -- really what I'm trying to find out, I'm trying to drill down to what the issue is and I'll tell you why.

MR. DORIA:  Yeah.

THE COURT:  What the rules say --

MR. DORIA:  I was coerced into giving them the notice to move out, Your Honor.

THE COURT:  Okay.

MR. DORIA:  Yeah.

THE COURT:  So that's --

MR. DORIA:  And I was placed under duress to provide that notice and maintain it.

MS. WALSH:  Your Honor, could I make an offer of proof?

THE COURT:  And that's -- that's okay.  So here -- what I'm -- what I'm sort of required to do is I got to take a look at -- this is -- we call this our initial hearing.

At the initial hearing, I have to make a determination that either there's a factual dispute that has merit or there is a -- or there is a legal dispute that has merit.  And if the court determines that it has merit, then I would typically set this over and do a full blown trial on it.  So that's kind of what --

MR. DORIA:  Your Honor --

THE COURT:  -- I'm looking at that.

MR. DORIA:  Your Honor --

THE COURT:  So that I understand, Mr. Doria, the issue that you're saying is that when you provided the email, that notice, those things were done as a result of duress from things that had taken place earlier in September; is that right?

MR. DORIA:  And November, the notices to

vacate.

THE COURT:  Okay.  Okay.

MR. DORIA:  Your Honor, if I may --

THE COURT:  To make sure --

MR. DORIA:  -- could I just point out that this is an RV park, so it's governed by the Arizona RV Act.

THE COURT:  I know that.

MR. DORIA:  Okay.

THE COURT:  I -- yeah.  No.  I -- I know that.  Okay.  All right.  I appreciate you giving me the information on that.

Counsel, I think you said you wanted to make a proffer to the court?

MS. WALSH:  Yes.  Mr. Doria provided a preliminary injunction in the superior court asking that the court bar my clients from never being able to file -- to give him another move out notice which --

MR. DORIA:  I object, Your Honor.

THE COURT:  It's okay.  She didn't interrupt when you were talking, so --

MS. WALSH:  At that --

MR. DORIA:  I'm just objecting for the record, Your Honor.

THE COURT:  That's fine.

MS. WALSH:  At that hearing, under oath, Mr. Doria admitted that the duress was simply asking him to sign a lease or they would ask him to move out.

There is no duress here.  That is not duress under the law.  He has admitted that the duress was simply asking him to sign a new lease, which he refused to do.  And so, unfortunately, there is no legal reason for the court to not move forward and -- and go forward with these eviction proceedings here today.

THE COURT:  Okay.

MS. WALSH:  There is no duress.

THE COURT:  All right.  And, Mr. Doria, with regard to that, I mean, is that -- is that an accurate summation?  Was it the fact that they were coercing you into entering a new agreement?

MR. DORIA:  That's partially correct, Your Honor.

THE COURT:  Okay.

MR. DORIA:  It's many things (indiscernible) spoken to you.  No, I was given documented notices to vacate without cause.  That's what caused the duress.

The initial cause was telling them -- they told the entire park, "Your leases are terminated.  We don't care if you've been here for more than six months or not.  You have no lease with us anymore.  It's over."

So I said, "No, you can't do that."  I asserted my rights and I said respectfully, and I've got a document here to show you if you'd like to see it here, Your Honor, saying that these -- "Respectfully, these are my rights, I'm asserting my rights.  Please don't retaliate."  And then I got three notices to vacate.  They retaliated, Your Honor.

So these are factual disputes.

MS. WALSH:  And, Your Honor, that doesn't meet the retaliation statute.  This isn't protected activity.

MR. DORIA:  Illegal --

MS. WALSH:  He admitted under oath he didn't attempt to unionize.  No one threatened to (indiscernible crosstalk) services --

MR. DORIA:  (Indiscernible crosstalk) an attempt to unionize.

MS. WALSH:  Sir --

MR. DORIA:  Your Honor, that's false.

THE COURT:  She didn't interrupt you, don't interrupt her, okay.  Wait your turn.

MS. WALSH:  He did not attempt to unionize which the statute calls for.  I mean, if you look at the elements of retaliation under the statute, unfortunately Mr. Doria just doesn't meet those elements.  This is not

retaliation.

They asked that he sign a new lease. They asked that all of the tenants sign a new lease as they all had limited term leases and they were changing some of the policies of the park. Mr. Doria decided he did not want to comply with the new policies of the park. He's a holdover tenant and they asked him to leave as is their right.

THE COURT: Okay. And, Mr. Doria, the emails that I looked at that went back and forth, did you send those emails confirming that you were going to be out on that January 9th date?

MR. DORIA: I don't know what emails you've seen, Your Honor. I'd have to be at a trial to go through proper discovery and examination. I have no idea what you're referring to.

THE COURT: All right. So -- and are you raising any other claims or is it just -- are you just indicating that these were done under duress and --

MR. DORIA: My claim is that they retaliated, they violated federal law. That's why the case has been removed to Federal Court, Your Honor, because this eviction has been used as a source of retaliation to violate the Fair Housing Act.

THE COURT: Okay.

MR. DORIA:  And I'll just state again for the record that it has been removed.  I spoke to the court this morning.

THE COURT:  Okay.  All right.  Give me just a moment here.

MR. DORIA:  Your Honor, I also have a paid for a move out to take place this Friday, so the case is moot.  We can proceed, but the case has become moot due to the plans to move out.

THE COURT:  So -- here we go.  So let me just -- give me a moment.

(Indiscernible conversation.)

THE COURT:  So here's what -- in compliance with Rule 10 of the Rules of Procedure, I've had a chance to review the Complaint and the allegations that are in there.  I've had a chance to speak with Mr. Doria to determine whether there were actual or legal allegations --

Are you recording, sir?

MR. DORIA:  No.  I'm taking notes.

THE COURT:  Okay.  Just so you know, there's a Supreme Court order that says you're not allowed to audio record or video record.  So if you are, please make sure that you are not doing that, okay?  Otherwise, you'd be in violation of that Supreme Court order.

MR. DORIA:  Understood, Your Honor.

THE COURT:  Okay.  Thank you.

All right.  So I have had a chance to review the allegations in the Complaint.  I've had a chance to speak to Mr. Doria to understand what factual or legal allegations that he -- that he takes issue with with regard to the Complaint and any defense that he might have.

Having -- since there's no written answer for the court to consider, I have had a chance to speak with Mr. Doria with regard to his legal defense.  The court has determined that the legal defense tendered would not qualify as a proper counterclaim in this case, that there is -- that there is enough sufficient -- well, that there's not a -- there's not a counterclaim that's eligible to pursue.

I -- the court is not persuaded with regard to the argument that there was duress, at least as it relates to any federal claim that would have a legal determining fact in this particular case; and as such, I'm going to go ahead and answer judgment on behalf of the Plaintiff in this case.

I will go ahead and order that the location at 420 Happy Jack Way, No. 177, in Cottonwood will be restored by the Defendant to the Plaintiffs.  I will

order that a writ of restitution can issue; however, it cannot issue any sooner than January 27th.  Only at that point in time would the landlord be eligible to come and request a writ of restitution.

Essentially, what that means, Mr. Doria, is that if you were there beyond January 27th, the landlord could come and get a writ of restitution.  They could take it to the constable.  The constable could come out and physically remove you from the property.

Counsel, I'm looking at Complaint.  In the Complaint I see that there's no -- there is a claim for  -- that you're not seeking for a money judgment, but you are seeking fees and costs.

Can you tell me what those fees and costs are?

MS. WALSH:  We would ask for attorney's fees, Your Honor, and at this time I don't have the exact amount because Mr. Doria has unnecessarily expanded this into three separate courts.

THE COURT:  Well, I understand.  I'll --

MS. WALSH:  If we can --

THE COURT:  --just tell you typically if it's a case that I'm handling at initial appearance, I don't grant more than $500 in attorney's fees.

So I will tell you that would be the most

that I would grant in this case.  So I'm going to order that.  You know, if you decide that that's inappropriate, I'll let you take that up.  But that's the most that I do in these types of cases at this setting.

MS. WALSH:  Thank you, Your Honor.  At this point we've spent well over $5,000, maybe into the $7,000 in this case.

THE COURT:  Okay.  And I will also include the costs as well, that being the filing fee and the service fee.

MR. DORIA:  Your Honor, would you clarify?  Is the request for trial being denied?  Could you just clarify that on the record?

THE COURT:  I -- I -- yeah.  The court specifically finds that there's no -- that there's no factual or legal position which has been presented by the Defendant that the court believes has merit which would justify this being set off for trial.

The court has found that the defenses that have been raised or defenses that are unique or specific to the Federal Court, which I think probably aligns itself to the fact that Mr. Doria has filed to have the case removed to Federal Court, and therefore the court has found that they don't pose a justify able purpose to

go forward or to have a trial at this point, and so I'm just going to just go ahead and enter the judgment. That's -- for the purposes of the record, that's why I did whey did.

Okay.  Let's see.  The filing fee was or service -- I have the filing fee, I got the service fee. And then, I'm sure there's a transaction fee on top of.  Do you know what's the transaction fee on that?  Do you know how much it is?

THE CLERK:  (Indiscernible) 650 for.

THE COURT:  650?

THE CLERK:  (Indiscernible).

THE COURT:  And, Counsel, I know you filed your original and I think you've also filed a secondary documents as well.  So (indiscernible).

$94 (indiscernible) costs.  No rates or late fees or utilities sought.  Give me a moment. (Indiscernible conversation.)

THE COURT:  All right.  I will make sure that each of you get a copy of my ruling.

Mr. Doria, obviously you've got a five-day window if you want to file the appeal.  I'll make sure that you get the paperwork that has all of the information for that.  If you hang tight, we'll make a copy of it so you can get everything right now before

20

you head out of the courthouse.

MR. DORIA:  Okay.

THE COURT:  Okay.  Anything additional?
Nope?  Okay.  We'll be at recess in this matter.  Thank
you very much.


(The recording concludes.)

STATE OF ARIZONA        )
                       )
COUNTY OF YAVAPAI       )

          BE IT KNOWN that the foregoing transcript was transcribed from a digital recording by Ashlee Mangum, Certified Reporter # 50612, for the State of Arizona; that I was the preparer of this transcript, but was not present in person at the proceedings.  The above-mentioned Court Reporter does not certify that the digital recording itself is accurate or complete.  Where the recording was unintelligible, inaudible, or garbled, the parenthetical "indiscernible" was inserted.

          I CERTIFY that the foregoing pages are a true and correct transcript of the digital recording, all done to the best of my skill and ability.

          I FURTHER CERTIFY that I am in no way related to nor employed by any of the parties hereto, nor am I in any way interested in the outcome of the proceedings.

          DATED at Prescott, Arizona, 2nd day of May, 2026.




_____
ASHLEE MANGUM, RPR
Registered Professional Reporter
Certified Reporter # 50612

# EXHIBIT K

# EXHIBIT K

Brittney K. Walsh, Esq.
State Bar No. 035279
**H & M LAW, PLLC**
P.O. Box 3700
Cottonwood, Arizona 86326
(928) 554-2070 office
(928) 438-0866 fax
court@hmlawfirmaz.com

Attorneys for Defendants

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA,<br><br>Plaintiff,<br><br>Vs.<br><br>COTTONWOOD SPRINGS RV, LLC, and HAPPY JACK LODGE, LLC<br><br>Defendants. | Case No. S1300CV202580488<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS AND DEFENDANTS' RESPONSES TO THERETO**<br><br>(Hon. Linda Wallace) |

Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC, by and through counsel undersigned, hereby responds to Plaintiff's First Set of Requests for Admissions, as follows:

**I. Admissibility and Authenticity of Documents**

1.  Admit that the document attached to the Complaint as **Exhibit B** is a true and correct copy of the "RV Site Rental Application & Agreement" entered into between Plaintiff and Cottonwood Springs RV Resort.

**Response 1.  Admit.**

2.    Admit that the signature on Page 5 of Exhibit B, under "Agent's Signature," belongs to Marina Hankins, the Property Manager of Cottonwood Springs RV Resort.

**Response 2.  Defendant is without knowledge or information sufficient to form a belief about the signature and, therefore, denies the same.**

3.    Admit that the document attached to the Complaint as **Exhibit C** is a true and correct copy of the "Notice of Material and Irreparable Breach / Immediate Notice to Move" issued by Defendants to Plaintiff on or about November 20, 2025.

**Response 3.  Admit.**

4.    Admit that the document attached to the Complaint as **Exhibit D** is a true and correct copy of the email sent by Plaintiff to Mike Mongini (mmongini@gustlaw.com) on December 11, 2025.

**Response 4.  Admit.**

**II.    The Lease Terms and "Pet-Sitting" Authorization**

5.    Admit that on March 10, 2025, Plaintiff and Defendants entered into a rental agreement for Site 177.

**Response 5.  Admit.**

6.    Admit that Page 2 of the Rental Agreement (Exhibit B) contains a handwritten notation in the "Pets" section that states "+Petsitting."

**Response 6.  Admit in part and deny in part. There is nothing written in the "Pets" portion of the Lease at ¶7, there is a handwritten addition on page 3 ¶ 15(c) prohibiting commercial activity at Cottonwood Springs RV.**

7.    Admit that Page 2 of the Rental Agreement (Exhibit B) explicitly lists "Sam" (16 yrs old) and "Tina" (14 yrs old) as pets.

**Response 7.  Deny.**

8.    Admit that Page 2 of the Rental Agreement (Exhibit B) contains the handwritten note: "Lessee babysits up to 4 dogs @ one time typically 1-2."

**Response 8.  Deny.**

///

9.    Admit that Marina Hankins, acting as Defendants' agent initialed Page 2 of the Rental Agreement next to the pet-sitting provisions.

**Response 9.  Deny.**

10.    Admit that Defendants accepted rent payments from Plaintiff from March 2025 through November 2025 without issuing a notice of violation regarding pet-sitting.

**Response 10.  Admit in part and deny in part. Defendants issued several warnings about violations of part rules, including, but not limited to, failure to maintain the premises and pick up pet waste.**

**III. Applicable Law and Tenancy Status**

11.    Admit that Plaintiff has resided at Cottonwood Springs RV Park for a period of exceeding 180 consecutive days.

**Response 11. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

12.    Admit that the premises located at 420 Happy Jack Way is a recreational vehicle park.

**Response 12. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

///

13.    Admit that Plaintiff's tenancy is governed by the *Arizona Recreational Vehicle Long-Ter Rental Space Act* (A.R.S. Title 33, Chapter 19).

**Response 13.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

14.    Admit that the *Arizona Mobile Home Parks Residential Landlord and Tenant Act* (A.R.S. § 33-1401 et seq.) does *not* apply to Plaintiff's recreational vehicle tenancy.

**Response 14.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**IV. The Defective Notice (Exhibit C)**

15.    Admit that the "Notice of Material and Irreparable Breach" (Exhibit C) served on Plaintiff cites A.R.S. § 33-1368(B).

**Response 15.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

16. Admit that A.R.S. § 33-1368(B) applies to the *Arizona Residential Landlord and Tenant Act* (for standard apartments/houses), not the *RV Long-Term Rental Space Act*.

**Response 16. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

17. Admit that the Notice (Exhibit C) states "Your signed agreement… has been month to month."

**Response 17. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

18. Admit that the Notice (Exhibit C) cites "inappropriate communication with Staff" as a reason for termination.

**Response 18. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

19. Admit that the Notice (Exhibit C) does not cite a specific date or specific incident regarding the alleged "inappropriate communication."

**Response 19. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

20. Admit that the Notice (Exhibit C) claims Plaintiff is in violation due to "babysitting (for money) numerous dogs," despite the handwritten authorization in the original Lease.

**Response 20. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

## V. The Cure and Retaliation

21. Admit that under A.R.S. § 33-2143 (RV Long-Term Rental Space Act), a tenant is entitled to a 10-day period to cure a health and safety violation or noncompliance with the rental agreement.

**Response 21. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for**

admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.

22.    Admit that Defendants received Plaintiff's email (Exhibit D) on December 11, 2025, stating: "Please note that all cited alleged lease breaches have been cured."

**Response 22. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

23.    Admit that Defendants did not inspect Plaintiff's RV site between December 11, 2025, and December 15, 2025, to verify if the guest dogs had been removed.

**Response 23. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

24.    Admit that prior to issuing the Notice on November 20, 2025, Defendants demanded Plaintiff sign a new lease that removed the pet-sitting authorization.

**Response 24. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

25.  Admit that Plaintiff refused to sign the new lease restricting his pet-sitting rights.

**Response 25. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

26.  Admit that the "Notice of Material and Irreparable Breach" was issued after Plaintiff asserted his rights under the original March 10, 2025 agreement.

**Response 26. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**VI. Damages and Ownership**

27.  Admit that Defendant Happy Jack Lodge, LLC holds an ownership interest in or manages Cottonwood Springs RV LLC.

**Response 27. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

28.  Admit that Julie Pendergast is the General Manager for Defendants.

**Response 28. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

29.   Admit that Defendants are currently in possession of Plaintiff's security deposit.

**Response 29. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

30.   Admit that attempting to terminate a lease because a tenant asserts their legal rights constitutes retaliation under A.R.S. § 33-2148.

**Response 30. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**VII. Duress and the January 9, 2026 Move-Out Date**

RFA 31.   Admit that on November 20, 2025, You served Plaintiff with a document titled "Notice of Material and Irreparable Breach / Immediate Notice to Move" (Exhibit C).

**Response RFA 31. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 32.    Admit that Exhibit C explicitly states: "Your landlord want you to move out now and return the keys immediately".

**Response RFA 32. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 33.    Admit that Exhibit C explicitly states: "The violation(s) cannot be fixed."

**Response RFA 33. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 34.    Admit that Plaintiff's communication regarding a potential move-out date of January 9, 2026, was sent **after** Plaintiff received the threat of immediate eviction contained in Exhibit C.

///

Defendants' Responses to Plaintiff's First Set of Requests for Admissions

10

**Response 34. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 35.    Admit that prior to receiving the "Immediate Notice to Move" on November 20, 2025, Plaintiff had not provided any notice of intent to vacate the premises.

**Response RFA 35. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 36.    Admit that Plaintiff's proposal to move out on January 9, 2026, was made in direct response to your demand for immediate possession of the property.

**Response RFA 36. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 37.    Admit that you did not offer Plaintiff any financial compensation or consideration in exchange for moving out on January 9, 2026, other than forbearing the immediate eviction threatened in Exhibit C.

**Response RFA 37.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

RFA 38.    Admit that the "Immediate Notice to Move" (Exhibit C) threatened that an eviction action "may be or has been filed against you."

**Response RFA 38.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 10 requests for admissions. Pursuant to Rule 36(a)(3), "Any party may serve on any other party requests for admission, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

Dated this 26th day of January, 2026.

**H & M LAW, PLLC**

By: */s/ Brittney K. Walsh*
Brittney K. Walsh, Esq.
Attorneys for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

The foregoing e-mailed
this 26th day of January, 2026, to:

Daniel T. Doria
989 S. Main St Ste A PMB 407
Cottonwood, AZ 863236
danieldoria105@yahoo.com
*Plaintiff Pro Se*

By: */s/ Kristie Kellerhals*

## <u>Verification</u>

I, Julie Pendergast, hereby declare:

That I am the General Manager and Authorized Agent for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC, the Defendants in the foregoing action; that I have read the foregoing: "Plaintiff's First Set of Request For Admissions, and Defendants' Responses Thereto" and know the contents thereof and state upon information and belief that the things stated therein are true in substance and in fact and that I do believe them to be true.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: _____Jan 26, 2026_____

*Julie Pendergast*
Julie Pendergast (Jan 26, 2026 16:48:43 MST)

Julie Pendergast, General Manager and Authorized Agent for Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

Defendants' Responses to Plaintiff's First Set of Requests for Admissions

13

# 20260126 Defs Response to Ps RFA

Final Audit Report                                                         2026-01-26

| | |
|---|---|
| Created: | 2026-01-26 |
| By: | Kristie Kellerhals (kakellerhals@yahoo.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAe3jJcDrZvxySraTbTT84mVgBKH1mSR7Y |

## "20260126 Defs Response to Ps RFA" History

🗐 Document created by Kristie Kellerhals (kakellerhals@yahoo.com)
2026-01-26 - 9:48:02 PM GMT

📥 Document emailed to Julie Pendergast (gmllc@happyjacklodge.com) for signature
2026-01-26 - 9:48:07 PM GMT

🗐 Email viewed by Julie Pendergast (gmllc@happyjacklodge.com)
2026-01-26 - 11:48:13 PM GMT

✍ Document e-signed by Julie Pendergast (gmllc@happyjacklodge.com)
Signature Date: 2026-01-26 - 11:48:43 PM GMT - Time Source: server

🕸 Agreement completed.
2026-01-26 - 11:48:43 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT L

# EXHIBIT L

Brittney K. Walsh, Esq.
State Bar No. 035279
**H & M LAW, PLLC**
P.O. Box 3700
Cottonwood, Arizona 86326
(928) 554-2070 office
(928) 438-0866 fax
court@hmlawfirmaz.com

Attorneys for Defendants

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA,<br><br>        Plaintiff,<br><br>Vs.<br><br>COTTONWOOD SPRINGS RV, LLC, and HAPPY JACK LODGE, LLC<br><br>        Defendants. | Case No.  S1300CV202580488<br><br>**PLAINTIFF'S FIRST SET OF INTEROGATORRIES AND DEFENDANTS' RESPONSES THERETO**<br><br>(Hon. Linda Wallace) |

Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC, by and through counsel undersigned, hereby responds to Plaintiff's First Set of Interrogatories, as follows:

**I. The Eviction Notice and Statutory Defects**

**Interrogatory No. 1**: State the specific factual and legal basis for citing A.R.S. § 33-1368(B) (The Arizona Residential Landlord and Tenant Act) in the "Notice of Material and Irreparable Breach" dated November 20, 2025, rather than the **Arizona Recreational Vehicle Long-Term Rental Space Act** (A.R.S. Title 33, Chapter 19), given that Plaintiff has resided in the RV Park for more than 180 days.

**Response to Interrogatory No. 1:**

**Objection: This interrogatory is not reasonably calculated to lead to the discovery of relevant, admissible, evidence. Defendants object to this interrogatory on the grounds it calls for Defendants to make a legal conclusion. Defendants further object to this interrogatory as premature. Defendants have not fully completed discovery. Further discovery, legal research, and analysis may supply additional information. Defendants reserve the right to supplement these responses should additional information become known as discovery and disclosure continues.**

**RESPONSE:**

**Without waiving said objections, Plaintiff improperly retained his space beyond the expiration of his lease, as well as his verbal and written promises to move out. He was not entitled to stay beyond the 180 days. Because the statutes are materially the same or similar, there was no prejudice to Plaintiff to cite to the Landlord Tenant Act instead of the Arizona Recreational Vehicle Long-Term Rental Space Act.**

**The law does not invalidate an eviction notice based on the statute cited. Plaintiff's argument that it does so is not supported in Arizona statutes or caselaw and is immaterial to the underlying issues brought before the Court.**

**Moreover, the initial notice to immediately vacate for irreparable breach served on November 20, 2025, was based on Plaintiff's violent and aggressive behavior toward staff. He breached the lease materially and irreparably by acting violently toward landlord and its agents, as such, he was given notice to vacate immediately under A.R.S. § 33-1368.**

**Interrogatory No. 2**: Explain specifically why the Notice dated November 20, 2025, demanded that Plaintiff "move out now" and "return the keys immediately", and identify what legal authority You relied upon to bypass the statutory notice periods (such as the 10-day cure period) generally required under Arizona law for long-term RV tenants (A.R.S. § 33-2143).

**Response to Interrogatory No. 2:**

**Objection: Defendants object to this interrogatory on the grounds it calls for the Defendants to make a legal conclusion. Further discovery, legal research, and analysis may supply additional information. Defendants reserve the right to supplement these responses should additional information become known as discovery and disclosure continues.**

**RESPONSE:**

**Without waiving said objections, A.R.S. § 33-1368 provides a list of material and irreparable breaches. It states, in part:**

**threatening or intimidating as prohibited in section 13-1202, assault as prohibited in section 13-1203, acts that have been found to constitute a nuisance pursuant to section 12-991 or a breach of the lease agreement that otherwise jeopardizes the health, safety and welfare of the landlord, the landlord's agent or another tenant or involving imminent or actual serious property damage, the landlord may deliver a written notice for immediate termination of the rental agreement and shall proceed under section 33-1377. The foregoing list of actions which may constitute a material and irreparable breach of a tenant's lease is not exhaustive.**

**As Plaintiff admitted at the preliminary injunction hearing, Plaintiff acted violently toward landlord pursuant to A.R.S. § 13-1202, which is a material and irreparable breach. As such, Defendant sought to immediately terminate his lease agreement for the safety of the agents and employees as well as other park residents.**

**II. Silence and Waiver Regarding Alleged Violations**

**Interrogatory No. 3**: Regarding the allegation in the Notice that Plaintiff failed to complete a "background and new lease agreement", state the specific date on which Plaintiff's tenancy allegedly became non-compliant due to this issue, and identify the date of the first written notice You sent to Plaintiff demanding compliance prior to the November 20, 2025 eviction notice.

**Response to Interrogatory No. 3:**

**Objection: Further discovery, legal research, and analysis may supply additional information. Defendants reserve the right to supplement these responses should additional information become known as discovery and disclosure continues.**
RESPONSE:

**Without waiving said objections, on October 23, 2025, Defendants sent an email to all residents seeking "Application, Agreements, Background check, Deposit, and copies of DL, insurance, and VIN/License Plates for all trailers and Vehicles, pet vaccinations…Failure to do so will result in full rate/and or eviction."**

**On that same date, Plaintiff responded he would go to full rate, implying he was refusing to comply. As such, his noncompliance with park rules and policies began at least on October 23, 2025.**

**Plaintiff is directed to Defendants' Initial Disclosures at 8 and 10.**

**Interrogatory No. 4**: Admit whether You accepted rent payments from Plaintiff from March 2025 through November 2025. If so, explain why You continued to accept rent for over eight months without issuing a notice of violation regarding the alleged lack of a background check or "new lease."

**Response to Interrogatory No. 4:**

**Objection: This interrogatory is not reasonably calculated to lead to the discovery of relevant, admissible, evidence. The interrogatory asks multiple, distinct questions in one, exceeding limits on subparts. Defendant objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Plaintiff. The interrogatory misstates facts and Defendant objects to the characterization of events. Defendants reserve the right to supplement these responses should additional information become known as discovery and disclosure continues.**

*///*

*///*

**RESPONSE:**

**Without waiving said objections, Plaintiff paid rent from March through November 2025. Defendant alleges that Plaintiff paid rent with employees after furnishing verbal notices to vacate with management. While the managers were out of the office, Plaintiff would pay rent despite verbal agreements to vacate based on his written refusals to comply with park rules and policies.**

**Plaintiff had numerous verbal and written discussions with Defendant's agents about his violations of park policy and refusal to submit to a background check and execute a new lease. Further, written communications alerted all residents as of at least October 23, 2025, that failure to comply with policies and procedures could result in eviction. As such, the Defendant only accepted rent for one month after notifying Plaintiff of the change in policies. After such date, Plaintiff voluntarily tendered his termination of residency on November 23, 2025.**

**Plaintiff is directed to Defendants' Initial Disclosures at 8 and 10.**

**Interrogatory No. 5**: Regarding the allegation that Plaintiff violated pet rules by "babysitting (for money) numerous dogs", state the exact date You first became aware of Plaintiff's pet-sitting activities, and explain why You did not issue any notice of violation regarding these activities prior to November 20, 2025.

**Response to Interrogatory No. 5:**

**Objection**: **This interrogatory is not reasonably calculated to lead to the discovery of relevant, admissible, evidence. This request is vague and ambiguous as it fails to specify the date, pleading or document, wherein the "allegation" was made for which plaintiff seeks a response. Defendants reserve the right to supplement these responses should additional information become known as discovery and disclosure continues.**

**Response:**

**Without waiving said objections, Plaintiff violated the Park's pet rules by failing to identify pets living on the premises. Moreover, Plaintiff failed to provide**

vaccination records for the pets he babysat or the pets living with him per Defendant's polices as stated in the October 23, 2025 email to all residents. Plaintiff was on notice for his violations on at least October 23, 2025. Defendant became aware of Plaintiff's violation of park policies on or about the same time. Plaintiff is directed to Defendants' Initial Disclosures at 8, 10, and 22.

Plaintiff further violates the Park's pet rules by not immediately picking up and disposing of pet waste. Defendants' agents and Plaintiff had numerous verbal discussions about these issues, which Plaintiff failed to cure after the verbal warnings.

**Interrogatory No. 6**: Explain how You reconcile the allegation that pet-sitting is a "material breach" with the handwritten notation "+ Petsitting" and "Lessee babysits up to 4 dogs" which was initialed by Your agent, Marina Hankins, on Page 2 of the Rental Agreement dated March 10, 2025.

**Response to Interrogatory No. 6:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**III. Plaintiff's Good Faith Offer to Cure**

**Interrogatory No. 7**: State whether Plaintiff communicated an offer to You, prior to the filing of this action, to update his file by signing a new lease agreement, submitting to a new background check, and performing other administrative tasks, provided that the existing "pet-sitting" authorization from the original agreement was preserved.

**Response to Interrogatory No. 7:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other**

**party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 8**: If You acknowledge receipt of the offer described in Interrogatory No. 7, state specifically the factual or business reason why You rejected Plaintiff's offer to fully update his file and instead proceeded with eviction.

**Response to Interrogatory No. 8:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 9**: State whether You contend that Plaintiff's refusal to waive his existing contractual right to "pet-sit" constituted a material breach of the lease sufficient to warrant immediate eviction. If so, identify the specific provision in the March 10, 2025 Agreement that Plaintiff violated by refusing to sign a new, less favorable agreement.

**Response to Interrogatory No. 9:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**IV. Duress and the "Voluntary" Move-Out Date**

**Interrogatory No. 10**: If You contend that Plaintiff's communication regarding a move-out date of January 9, 2026, was a voluntary offer independent of the "Immediate Notice to Move" served on November 20, 2025, please state all specific facts and timelines supporting this contention.

**Response to Interrogatory No. 10:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 11**: State whether You or any agent acting on Your behalf informed Plaintiff—either verbally or in writing—that the "Immediate Notice to Move" (and the threat of an immediate lockout or lawsuit) would be rescinded or withheld only if Plaintiff agreed to vacate by January 9, 2026.

**Response to Interrogatory No. 11:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**V. Retaliation and Coordination (Haws & Mongini)**

**Interrogatory No. 12**: Identify all communications (including dates, subject matter, and participants) between Michael Mongini and Robert Haws regarding Plaintiff Daniel T.

Doria between September 1, 2025, and the present, specifically regarding whether these communications involved coordination between the current eviction matter and the separate federal litigation involving Robert Haws.

**Response to Interrogatory No. 12:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 13**: State whether Robert Haws or any other attorney at Gust Rosenfeld P.L.C. was consulted regarding the decision to issue the "Immediate Notice to Move" on November 20, 2025, or the decision to demand Plaintiff sign a new lease modifying his pet-sitting privileges.

**Response to Interrogatory No. 13:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 14**: Describe the policy or procedure, if any, that Cottonwood Springs RV LLC follows regarding conflict checks when its legal counsel (or members of its counsel's firm) are already engaged in active litigation against a current tenant in a separate matter.

///

**Response to Interrogatory No. 14:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**VI. Specific Allegations of "Inappropriate Communication"**

**Interrogatory No. 15**: In the Notice dated November 20, 2025, You allege "inappropriate communication with Staff and general manager". For each instance of alleged inappropriate communication, please identify: (a) The specific date and time; (b) The name of the staff member involved; (c) The specific words, phrases, or conduct You contend were "inappropriate"; and (d) The names of any witnesses who observed the interaction.

**Response to Interrogatory No. 15:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**VII. The Cure and Verification**

**Interrogatory No. 16**: Regarding Plaintiff's email dated December 11, 2025, titled "Cured Breaches - Complete" (Exhibit D), state specifically what steps, if any, You took to verify whether the alleged breaches had been cured (e.g., did You inspect the site?), and explain why You proceeded with eviction efforts despite receiving this notice of cure.

///

**Response to Interrogatory No. 16:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**Interrogatory No. 17**: Identify all persons (by name, job title, and contact information) who participated in the decision to terminate Plaintiff's tenancy or who have knowledge of the facts alleged in Your defenses.

**Response to Interrogatory No. 17:**

**OBJECTION. Pursuant to Rule 26.2(f), each side in a Tier 1 case is permitted only 5 interrogatories. Pursuant to Rule 33(a)(2), "A party may serve on any other party interrogatories, subject to the numeric limits in Rule 26.2(f) and the procedures in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of interrogatories permitted by Rule 26.2(f) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

Dated this 26th day of January, 2026.

**H & M LAW, PLLC**

By: */s/ Brittney K. Walsh*
Brittney K. Walsh, Esq.
Attorneys for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

The foregoing e-mailed
this 26th day of January, 2026, to:

Daniel T. Doria
989 S. Main St Ste A PMB 407
Cottonwood, AZ 863236
danieldoria105@yahoo.com
*Plaintiff Pro Se*

By:   */s/ Kristie Kellerhals*

# EXHIBIT M

# EXHIBIT M

Brittney K. Walsh, Esq.
State Bar No. 035279
**H & M LAW, PLLC**
P.O. Box 3700
Cottonwood, Arizona 86326
(928) 554-2070 office
(928) 438-0866 fax
court@hmlawfirmaz.com

Attorneys for Defendants

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| DANIEL T. DORIA,<br><br>Plaintiff,<br><br>Vs.<br><br>COTTONWOOD SPRINGS RV, LLC, and HAPPY JACK LODGE, LLC<br><br>Defendants. | Case No.  S1300CV202580488<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION AND DEFENDANTS' RESPONSES THERETO**<br><br>(Hon. Linda Wallace) |

Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC, by and through counsel undersigned, hereby responds to Plaintiff's First Set of Requests for Production, as follows:

**I. Coordinated Retaliation and Legal Strategy (Haws/Mongini)**

1.     **Communications with Robert Haws:** All emails, text messages, memos, or correspondence between **Michael Mongini** and **Robert Haws** regarding Plaintiff Daniel T. Doria, specifically including any discussions regarding Plaintiff's tenancy, eviction, or litigation strategy.

///

**RESPONSE 1.:   Defendants are not in possession of, nor are they aware of the existence of any such communications. Moreover, any such communications, if they exist, would be privileged pursuant to A.R.S. § 12-2234.**

2.     **Communications with Agents:** All communications between Robert Haws and any agent, employee, or manager of **Happy Jack Lodge LLC or Cottonwood Springs RV LLC** (including Julie Pendergast or Marina Hankins) regarding Plaintiff Daniel T. Doria.

**RESPONSE 2.:   Defendants are not in possession of, nor are they aware of the existence of any such communications. Moreover, any such communications, if they exist, would be privileged pursuant to A.R.S. § 12-2234.**

3. **Conflict Checks/Internal Files:** Any internal conflict check records, intake forms, or file notes with Gust Rosenfeld P.L.C. that reference Daniel T. Doria in relation to both the current matter and the federal appeals case involving Robert Haws.

**RESPONSE 3.:   Defendants are not in possession of, nor are they aware of the existence of any such communications. Moreover, any such communications, if they exist, would be privileged pursuant to A.R.S. § 12-2234.**

4. **Coordination of Eviction.** Any documents discussing the timing of the "Notice of Material and Irreparable Breach" (Exhibit C) in relation to the status or events of the separate federal litigation involving Robert Haws.

**RESPONSE 4.:   Defendants are not in possession of, nor are they aware of the existence of any such communications. Moreover, any such communications, if they exist, would be privileged pursuant to A.R.S. § 12-2234.**

**II. The Lease and Tenancy Documents**

5.     **The "New" Lease:** A blank or filled copy of the proposed new lease agreement You demanded Plaintiff sign in or around November 2025, which purportedly removed the pet-sitting authorization.

**RESPONSE 5.: Plaintiff is referred to Defendant Happy Jack Lodge, LLC's Initial Disclosure Statement, Section 8, item 28, a copy of which was attached thereto.**

**6.    Tenant File:** The complete tenant file maintained by You regarding Daniel T. Doria, including application materials, background check results (or lack thereof), ledger of payments, and internal notes.

**RESPONSE 6.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**7.    Proof of Payment:** All ledgers, bank records, or accounting documents reflecting rent and utility payments made by Plaintiff from March 2025 to present.

**RESPONSE 7.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**8.    Authority of Agents:** All documents defining the job duties and authority of Marina Hankins (Property Manager) and Julie Pendergast (General Manager), specifically regarding their authority to modify lease terms or approve pet-sitting arrangements.

**RESPONSE 8.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to**

exceed those limits." **Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**III. Internal Communications Regarding Retaliation**

9. **Internal Emails Regarding Plaintiff:** All internal emails, text messages, or instant messages between Marina Hankins, Julie Pendergast, Mike Mongini, and/or any other owner/employee regarding Daniel T. Doria, Site 177, or the decision to terminate Plaintiff's tenancy.

**RESPONSE 9. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

10. **Communications Regarding Pet-Sitting:** All communications discussing Plaintiff's pet-sitting activities, including any complaints received from other tenants (if any) or internal discussions about revoking the authorization granted on March 10, 2025.

**RESPONSE 10. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**11.**   **Reaction to "Refusal to Sign":** All documents or communications created between November 1, 2025, and November 20, 2025, that mention Plaintiff's refusal to sign a new lease or Plaintiff's assertion of rights under existing lease.

**RESPONSE 11.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**IV. The "Duress" and Move-Out Date**

**12.**   **Drafting of Exhibit C:** All drafts, notes, or communications regarding the creation and issuance of the "Notice of Material and Irreparable Breach / Immediate Notice to Move" dated November 20, 2025 (Exhibit C).

**RESPONSE 12.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**13.**   **Discussion of Eviction Strategy:** Any documents discussing the strategy of using an "immediate" eviction notice or the threat of locking Plaintiff out to secure possession of the property.

**RESPONSE 13.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party**

may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.

14. **Receipt of Move-Out Offer:** All internal communications discussing Plaintiff's notice/offer to vacate on January 9, 2026, specifically any emails analyzing whether this offer was voluntary or a result of the November 20, 2025 notice.

**RESPONSE 14. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

15. **Legal Analysis of "Immediate" Notice:** Any internal memos or correspondence (not privileged) discussing the decision to cite A.R.S. § 33-1368(B) (Mobile Home Act) instead of the RV Long-Term Rental Space Act in the eviction notice.

**RESPONSE 15. OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**V. The Alleged Breaches and "Cure"**

**16.    "Inappropriate Communication" Evidence:** All documents, recordings, or witness statements that support the allegation in Exhibit C that Plaintiff engaged in "Inappropriate communication with Staff and general manager."

**RESPONSE 16.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**17.    "Background Check" Evidence.** All documents proving that Plaintiff failed to complete a background check, including any written requests sent to Plaintiff *prior* to November 20, 2025, demanding such a check.

**RESPONSE 17.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**18.    Inspection Records (The Cure):** All logs, notes, or photographs taken by You or Your staff between December 11, 2025, and December 15, 2025, regarding Site 177, specifically any evidence verifying or refuting that the guest dogs had been removed.

**RESPONSE 18.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party**

may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.

**19.    Response to Cure Email:** All internal communications generated in response to Plaintiff's December 11, 2025 email (Exhibit D) titled "Cure Breaches – Complete."

**RESPONSE 19.   OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

**VI. Corporate Structure (Piercing the Veil)**

**20.    Ownership Documents:** Documents sufficient to show the ownership structure of Cottonwood Springs RV LLC and its relationship to Happy Jack Lodge, LLC.

**RESPONSE 20.   OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

///

**21.    Management Agreements:** The contract or agreement between Cottonwood Springs RV LLC and Happy Jack Lodge, LLC regarding the management of the RV Park.

**RESPONSE 21.  OBJECTION. Pursuant to Rule 26.2(f)(1), each side in a Tier 1 case is permitted only 5 requests to produce. Pursuant to Rule 34(b)(1), "Any party may serve on any other party requests for items or distinct categories of items, subject to the numeric limits in Rule 26.2(g) and (h) for obtaining permission to exceed those limits." Plaintiff Daniel Doria has exceeded the number of requests for admission permitted by Rule 26.2(f)(1) and has failed to follow the procedures for overlimit discovery. As such, no response is required or provided.**

Dated this 26th day of January, 2026.

**H & M LAW, PLLC**

By: */s/ Brittney K. Walsh*
      Brittney K. Walsh, Esq.
      Attorneys for Defendants Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

The foregoing e-mailed
this 26th day of January, 2026, to:

Daniel T. Doria
989 S. Main St Ste A PMB 407
Cottonwood, AZ 863236
danieldoria105@yahoo.com
*Plaintiff Pro Se*

By: */s/ Kristie Kellerhals*

Defendants' Response to Plaintiff's First Set of Requests for Production
**9**

# EXHIBIT N

# EXHIBIT N

DANIEL T. DORIA
989 S Main St Ste A PMB 407
Cottonwood, AZ 86326
702-279-5326
danieldoria105@yahoo.com
Plaintiff / Pro Se

IN THE SUPERIOR COURT OF ARIZONA IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| **DANIEL T. DORIA**, | **CASE NO. S1300CV202580488** |
| Plaintiff, | |
| v. | **PLAINTIFF'S INITIAL DISCLOSURE STATEMENT (RULE 26.1)** |
| **COTTONWOOD SPRINGS RV LLC**, an Arizona Limited Liability Company; | |
| **HAPPY JACK LODGE, LLC**, a foreign Limited Liability Company; | |
| and JOHN DOES I-X, | |
| Defendants. | |

Pursuant to Rule 26.1 of the Arizona Rules of Civil Procedure, Plaintiff Daniel T. Doria hereby provides the following Initial Disclosure Statement. This disclosure is based on information reasonably available at this time, and Plaintiff reserves the right to supplement this disclosure as discovery proceeds.

## I. FACTUAL BASIS OF CLAIMS (Rule 26.1(a)(1))

Plaintiff has been a tenant at the Cottonwood Springs RV Park (Space #177) for a period exceeding 180 consecutive days, rendering his tenancy subject to the Arizona Recreational Vehicle Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.).

1. Tenancy Status: Plaintiff entered into a written rental agreement on March 10, 2025. Per Paragraph 3 of said agreement, the lease automatically renewed on a month-to-month basis upon expiration of the initial term. Plaintiff is not a "holdover" tenant but a contractual tenant in good standing.

2. Authorized Use: Defendants attempt to allege breach based on Plaintiff's pet-sitting activity. However, the written Lease Agreement (Page 7) contains an express, handwritten modification initialed by management authorizing Plaintiff to "babysit up to 4 dogs."

3. Retaliation: In September 2025, Defendants attempted to unilaterally impose new application requirements and fees. Plaintiff asserted his statutory rights to refuse these unilateral changes. Immediately thereafter, Defendants threatened eviction and non-renewal. This temporal proximity creates a presumption of retaliation under A.R.S. § 33-2148.

4. Disability/FHA: Plaintiff is a person with a disability. Defendants were on notice of Plaintiff's medical need for accommodation (support animals/business structure). The threatened eviction violates the Fair Housing Act and Arizona Fair Housing Act.

5.  Duress: Any alleged "Move-Out Notice" signed by Plaintiff was procured under Economic Duress and coercion, as Defendants threatened immediate utility disconnection and lockout, leaving Plaintiff with no reasonable alternative.

## II. LEGAL THEORIES (Rule 26.1(a)(2))

Plaintiff relies on the following legal theories:

1.  Violation of A.R.S. § 33-2143: Termination of a long-term RV tenancy without "Good Cause" is prohibited.

2.  Retaliation (A.R.S. § 33-2148): It is unlawful to terminate a tenancy or decrease services in retaliation for a tenant complaining to management about statutory violations.

3.  Breach of Contract: Defendants are in breach of the Lease Agreement's automatic renewal clause and the specific "pet" modification.

4.  Equitable Estoppel/Waiver: Defendants accepted rent through November 9, 2025, and failed to dispute Plaintiff's October 1, 2025 email confirming the waiver of background checks. They are estopped from asserting these as grounds for eviction.

5.  Economic Duress: Under *Frank Culver Elec., Inc. v. Jorgensen*, the "Move-Out Notice" is voidable.

## III. WITNESSES (Rule 26.1(a)(3))

Plaintiff expects to call the following witnesses:

1.  Daniel T. Doria (Plaintiff): Will testify regarding the lease negotiation, the timeline of tenancy, the authorization of the dogs, the medical necessity of the animals, the timeline of payments, and the coercive threats made by management.

2.  Julie Pendergast (General Manager): May be called regarding the "Verified Answer" and the discrepancies between her sworn statements and the park's business records.

3. Marina Serventi-Hankins (Former Manager): Regarding the initial execution of the lease and the handwritten authorization for the dogs.

4. Brandon Douglas (Business Partner): Will testify regarding the nature of the business/tenancy and matters related to the Plaintiff.

   ○ Address: 326 Hammersly Blvd, Markham, Ontario L6E 0L5

   ○ Phone: 905-962-8228

5. Treating Medical Providers: Plaintiff reserves the right to call treating physicians whose records have been disclosed to authenticate medical necessity, if challenged.

## IV. DOCUMENTS (Rule 26.1(a)(4))

Plaintiff has already provided access to these documents via the electronic portal link served on Defendants on December 22, 2025, and December 23, 2025.

1. Lease Agreement (March 10, 2025): Including the "Automatic Renewal" clause and handwritten "Dog Authorization."

2. Rent Receipts/Ledgers: Proving payment through November 2025.

3. Correspondence: Email chain from Sept 24, 2025 – Dec 2025 between Plaintiff and Management (including the Oct 1, 2025 "Waiver" email).

4. Medical Records: Approximately 700 pages of medical history and SSA disability determinations (Subject to Protective Order/Confidentiality).

5. Notices: The various "Move-Out" and "Termination" notices served by Defendants.

## V. COMPUTATION OF DAMAGES (Rule 26.1(a)(6))

Plaintiff seeks the following relief and damages:

1. Injunctive Relief: Restoration of peaceful possession and prohibition of eviction.

2.  Statutory Damages: Two months' periodic rent for unlawful retaliation (approx.
    $1,000.00) pursuant to A.R.S. § 33-2148.

3.  Actual Damages: Costs incurred due to the interference with tenancy, legal preparation
    costs, and emotional distress associated with the threat of homelessness (FHA
    violations), estimated in excess of $5,000.00.

4.  Attorneys' Fees and Costs: Pursuant to A.R.S. § 12-341.01 and § 33-2142.

## VI. VERIFICATION

I certify that the information provided in this Disclosure Statement is correct and complete to the
best of my knowledge, information, and belief.

DATED this 24th day of December, 2025.

Daniel T. Doria

Plaintiff, Pro Se

# EXHIBIT O

# EXHIBIT O

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
02/27/2026  4:55PM
BY: EDENISON
DEPUTY

Brittney K. Walsh, Esq.
State Bar No. 035279
**H & M LAW, PLLC**
P.O. Box 3700
Cottonwood, Arizona 86326
(928) 554-2070 office
(928) 438-0866 fax
court@hmlawfirmaz.com

Attorneys for Defendant HAPPY JACK LODGE, LLC

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF YAVAPAI

| DANIEL T. DORIA,<br><br>             Plaintiff,<br><br>Vs.<br><br>COTTONWOOD SPRINGS RV, LLC, and HAPPY JACK LODGE, LLC<br><br>             Defendants. | Case No.  S1300CV202580488<br><br>**DEFENDANT'S MOTION TO DEEM PLAINTIFF A VEXATIOUS LITIGANT UNDER A.R.S. § 12-3201**<br><br>(Hon. Linda Wallace) |
|---|---|

COMES NOW Defendant, Cottonwood Springs dba HAPPY JACK LODGE, LLC ("HJL"), by and through counsel undersigned, and pursuant to Arizona Revised Statutes ("A.R.S.") § 12-3201 moves this Court to deem Plaintiff, Daniel T. Doria ("Doria") a Vexatious Litigant who "may not file a new pleading, motion or other document without prior leave of the court." A.R.S. § 12-3201(B).

This Motion is supported by the enclosed Memorandum of Points and Authorities.

///

///

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    BACKGROUND

On March 10, 2025, Doria signed a three-month lease with HJL. Upon expiration of the lease, Doria's lease became month-to-month, and Doria became a holdover tenant. Despite numerous attempts to execute a new lease from Doria that complies with the HJL's updated policies, Defendant was unsuccessful.

Before any lawsuits were filed, Doria voluntarily terminated his lease. On November 25, 2025, he notified HJL in writing that his last day of tenancy would be January 9, 2026. Thereafter HJL stopped accepting rent from Doria. Doria then sued HJL for breach of "contract" and retaliation in Superior Court.

### A.    The Superior Court Lawsuit against HJL

On December 1, 2025, Doria filed a Complaint in the Superior Court seeking Declaratory judgment, Breach of Contract, and Permanent Injunction. Simultaneously, Doria filed an Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction preventing any eviction action, lockout, or disturbance of the holdover tenancy that Doria had voluntarily terminated in writing.

On December 11, 2025, Doria filed evidence on the docket through a "Notice of Filing of Supplemental Evidence."

On December 17, 2025, Doria filed a Motion to Deem Service Complete Based on Statutory Appointment and Estoppel. At all times, HJL, its agents and managers, were willing and able to accept service, which had been communicated to Doria via email numerous times.

On December 24, 2025, Doria filed a Motion in Limine with a blanket objection to Defendant's witnesses, all of whom were disclosed in HJL's Initial Disclosure Statement.

Also on December 24, 2025, Doria filed a Trial Brief not ordered by the Court or permitted by the Rules of Civil Procedure. Doria argues in his Trial Brief, "Plaintiff is not a holdover tenant. He is a contractual month-to-month tenant." A holdover tenant and a month-to-month tenant are synonymous. Doria's legal positions are not credibly based in

2

Arizona law but has sued HJL in two Courts based on fabricated assertions. As discussed below, Doria knows or should have known the frivolous and baseless nature of his arguments.

On December 24, 2025, Plaintiff disclosed his disability for the first time in his initial disclosure statement. *See* **Exhibit J**.

A contested hearing on Doria's preliminary injunction was held on December 29, 2025, and the Court issued an Order denying his relief stating:

> What Plaintiff's motion essentially seeks is for the court to preemptively issue a ruling related to the legitimacy of his defenses to an eviction that has not been filed. The court finds that this is not a proper request... If the Plaintiff's landlord files an eviction, the Plaintiff will be given an opportunity to be heard in defense in the eviction matter. Moreover, Plaintiff has not shown a strong likelihood of success on the merits nor a probable success on the merits as the court received testimony related to the allegations of pet waste, verbal abuse of staff by plaintiff, plaintiffs notice of move out date, etc.

Thereafter, on December 30, 2025, without any benefit of discovery, Doria filed a Motion for Summary Judgement misstating the evidence and testimony presented at the hearing. Moreover, he ignores the basis of the Court's ruling as stated above. ("the court received testimony related to the allegations of pet waste, verbal abuse of staff by plaintiff, plaintiffs notice of move out date, etc.") He seeks summary judgment on the same issues upon which the Court found he was not likely to be successful on the merits.

Doria's entire case is based on assertions that he cannot support with fact or law. Including (but not limited to the following):

- Breach of contract for a tenancy **he voluntarily terminated in writing**. HJL accepted his termination and thereafter Doria sued HJL.

- His termination was made under duress. However, he fails to provide any evidence of duress. He admitted at the preliminary injunction hearing that the duress was seeking a new executed lease and background check from him.[1]

///

---

[1] Doria's criminal history would have disqualified him from tenancy. Upon belief, Doria failed to comply with a background check knowing he would be asked to leave for his federal criminal history.

3

- The eviction notice is facially deficient for citing the wrong, albeit substantially similar, statute. Arizona law does not support this assertion.
- HJL retaliated against Doria. Doria testified at the preliminary injunction hearing that he did not engage in the protected activity contemplated by the statute.

Additionally, Doria's Complaint and Court filings are obviously AI-generated. In fact, he failed to fill in the brackets at ¶ 5 of his Complaint, which shows that he is using AI to generate his pleadings. As discussed in HJL's Reply in Support of its Motion for Summary Judgment, Doria claims, "an unlawful nonrenewal notice under the governing RV statute and on a disputed, outcome-determinative factual premise." (See Opposition p. 2.) For instance, "non-renewal notice" is an insurance term that the average person would not use in a breach of contract or lease dispute. Later, his AI-generated Opposition misstates the information given on the Judicial Branch's website for tenants who are claiming retaliation. HJL contemporaneously brings a vexatious litigant motion against Doria for these egregious misstatements of law and fact. These are just a few examples of the AI- generated hallucinations brought before this Court. While AI-generated Complaints are allowed, bringing groundless claims that he knows or should know are groundless are not allowed.

Doria's Motion for Summary Judgment failed to properly cite legal support for his Motion and misrepresented the evidence presented to the Court. Upon belief, he filed his Motion to waste time and resources.

On December 31, 2025, Doria filed a Notice of Tender of Rent and Defendant's Refusal to Accept.

On January 1, 2026, Doria filed a Motion for Clarification on the Court's January 5, 2026, Order.

On January 19, 2026, Doria filed to voluntarily dismiss this case without prejudice. He seeks dismissal because in January, Doria expanded this case into Federal Court. As discussed below, Doria has a history of expanding litigation into several courts without cause. *See* **Exhibits A-F**. By now, Doria knows that he cannot try cases in several Courts.

4

Doria has had his cases dismissed with attorneys' fees awarded against him for this behavior.

Upon belief, he seeks a second bite at the preliminary injunction apple in Federal District Court. This behavior is vexatious and warrants a determination of the same. A.R.S. § 12-3201(E)(1)(a-c).

### B.    The Eviction Action Against Doria

On January 12, 2026, per Doria's written notice to vacate and HJL's acceptance of the same, HJL sought an eviction action in Justice Court for Doria's failure to vacate. Forcible Detainer was granted, with the Justic Court rejecting Doria's arguments about retaliation. *See* Judgment at **Exhibit C**.

On January 16, 2026, Doria filed a Notice of Removal to Federal Court from the Justice Court case. The Justice Court denied relinquishing its exclusive state-court jurisdiction. Arizona courts have exclusive jurisdiction over eviction actions. *See* Order at **Exhibit C**.

### C.    The Federal Lawsuit Against HJL

On January 7, 2026, Doria sent HJL, though counsel, an email notifying HJL that he will file a federal complaint. His threat included parties to which HJL has no relation. (He claimed he had filed but had not done so yet.) He stated, "We can proceed down the path of protracted federal litigation—which will involve extensive discovery regarding Mr. Haws'[2] prior conduct, the firm's involvement in this eviction, and the internal communications of Happy Jack Lodge—or we can resolve this matter globally right now." *See* **Exhibit K**.

Mr. Doria demanded $12,500 in order to not proceed with his federal lawsuit. When HJL declined to pay Doria, he expended this litigation into the District Court of Arizona. *See id*.

On January 12, 2026, Doria filed a Complaint for Declaratory Judgment and Injunctive relief in the Arizona District Court seeking violation of the Fair Housing Act, ///

---

[2] Notably, Mr. Haws's law firm was issued an injunction against harassment against Doria for Doria's behavior during litigation. Upon belief, by frivolously including Haws in his Federal Complaint, Doria violates that injunction.

**5**

Retaliation, and Violation of Arizona RV Long-Term Rental Space over the same nexus of facts as alleged in this Court.

On January 15, 2026, Doria amended his Complaint per the District Court's instructions and dismissal of his initial complaint claiming (1) Violation of Fair Housing Act (42 U.S.C. § 3601 et seq.) (2) Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985(3)) (3) Retaliation (42 U.S.C. § 3617) (4) Abuse of Process (5) Violation of Arizona RV Long-Term Rental Space Act (A.R.S. § 33-2101 et seq.). *See* **Exhibit M**. This time, he named Robert Haws, Michael Mongini, the statutory agent of the HJL LLC, Gust Rosenfeld, HJL, Cottonwood Springs, and counsel for HJL, Brittney Walsh. *Id*.

Doria's Federal lawsuit against HJL on the same nexus of facts in the District Court of Arizona.[3] *See* **Exhibit L**. In that Complaint, he again seeks injunctive relief, despite denial of the same or similar request for injunctive relief in this Court.

In that Complaint, Doria asserts, under oath, that he made requests for accommodation for his disability. However, the eviction notices were issued before Doria disclosed his mental health records on December 24, 2025. *See* **Exhibit J.**

On or about February 13, 2026, Doria asserted to the Federal Court that the Superior Court dismissed this action. He makes such claims without a Court Order dismissing this case.

As outlined below, Doria knew or should have known this expansion of litigation is groundless. He has previously had sanctions awarded against him for abusive and groundless litigation. His history of abusing the Courts warrants the vexatious litigant determination.

### D. Doria's Abusive Actions Outside of Court

On or about February 8, 2026, Doria emailed counsel claiming to have made a complaint to the Arizona Attorney General's Office about billing practices. Upon belief, this complaint was made to retroactively create evidence for his retaliation claims.

On February 10, 2026, Counsel for HJL reached out to Doria via telephone for a meet and confer to discuss a motion to dismiss his complaints in the Superior and Federal

---

[3] HJL has not been served with the documents in this Complaint, but Doria alerted HJL to the Complaint by demanding a payment in exchange for dismissal of this case.

Court cases. Doria was hostile and belligerent. Halfway through the call, Doria began yelling and refused to let counsel speak. Doria went as far to call counsel a "cunt." Counsel chose to terminate the call as any agreements or reasonable discussion seemed impracticable based on Doria's aggressive behavior. A recording of such phone call is attached hereto as **Exhibit O**. However, this behavior is in line with his history of threats. He was similarly threatening and aggressive to the manager of HJL, which Doria admitted several times under oath at the preliminary injunction hearing.

He also threatens to use the legal system to bully people to pay him money to avoid their legal costs. *See* **Exhibit K**.

On February 18, 2026, Doria threatened a bar complaint against counsel for his distorted and perjurious version of events, continuing his campaign of threats and abuse. *See* **Exhibit H**. This threat included an allegation that counsel violated ethics for referring to Doria's testimony at the preliminary injunction hearing that he did not engage in certain protected activity contemplated under the statute in its Motion for Summary Judgment. Doria takes issue with these undisputed facts claiming he <u>did</u> make such complaints. Seemingly this assertion is based on alleged complaints made to the Attorney General <u>well after his eviction</u>.[4] *See* **Exhibit G**.

Because of the record in this case, the federal lawsuits filed, and Doria's history of expending lawsuits in several courts, HJL respectfully requests this Court deem Doria a vexatious litigant under A.R.S. § 12-3201.

## II.    PLAINTIFF'S HISTORY OF ABUSIVE LAWSUITS

A public access search shows 15 cases where Doria is named in civil actions. In at least six (6) of these actions, he groundlessly expanded the litigation into numerous courts. His history of using the Courts for groundless, abusive purposes is outlined below:

///

///

---

[4] No proof of a complaint has been disclosed, nor has the Attorney General contacted HJL. Moreover, the email alleging the complaint was made was sent <u>after</u> Doria's under oath testimony that he did not engage in the activity contemplated in A.R.S. § 33-2148. *See* **Exhibit G**. Again, Doria appears to be creating evidence to retroactively save his deficient and groundless claims a complaint made to the Attorney General, if any. This untimely and groundless creation of evidence is more proof of vexatious conduct.

7

### A.    *Doria v. Verde River LLC*

On January 18, 2023, Doria filed a Notice of Application for Temporary Restraining Order and Request for Order to Show Cause re: Preliminary Injunction against Defendant Verder River RV, LLC. On January 20, 2023, the court dismissed the action for lack of diversity jurisdiction or federal question jurisdiction. *See* **Exhibit A**.

On February 13, 2023, Verde River RV filed an Eviction action at J-1302-CV-2023000119. A judgment was issued on February 23, 2023. *Found online* at Public Access.

On January 20, 2023, the District Court issued an Order Dismissing his complaint against Verde River Cottages, stating,

> The Court lacks diversity jurisdiction because Plaintiff and Defendants all are from the same state. That leaves federal question jurisdiction, which Plaintiff attempts to manufacture by alleging Defendants have violated 18 U.S.C. §§ 1028, 2261A. But these are federal criminal statutes, which generally do not provide for a private civil right of action…With no cognizable federal claims at issue, this Court lacks federal question jurisdiction. If Plaintiff wants to proceed with his state law claims against Defendants, he must file his lawsuit in state, rather than federal, court.

*See* **Exhibit A**.

As such, Doria's prior dismissed lawsuits shows that he knows, or should know, that his current Federal Court claims against HJL, it's attorneys, and attorneys with whom HJL has never met or done business, are not properly before the Federal Court.

As discussed above, Doria fabricates claims and evidence against HJL to create a Federal Question where there is none. He does this knowingly as the Federal Court has dismissed claims on similar grounds prior.

### B.    *Doria v. Yavapai College District Governing Board, Seth Weidling Sterdevant*

On January 8, 2025, Doria filed two cases against the Yavapai District Governing Board and Seth Weidling Sterdevant. Doria filed one case in Justice Court and one in Superior Court. *See* **Exhibit B**.

///

**8**

On February 3, 2025, the Yavapai District Governing Board filed an eviction action against Doria in Justice Court. *Id*.

Thereafter on February 8, 2025, Doria filed against the Yavapai District Governing Board and Seth Weidling Sterdevant in the Federal District Court of Arizona. *Id*.

On February 28, 2025, Doria filed a Complaint in Federal Court against the Yavapai College District Governing Board, Seth Wielding, and attorneys Robert Haws and John Butzer. *Id*. Doria sued for injunctive relief, damages, and emergency Relief claiming violations of the Americans with Disabilities Act, the Fair Housing Act, and the Arizona Fair Housing Act claiming his eviction was retaliation. *Id*. On August 25, 2025, the District Court dismissed Doria's case, in part due to res judicata. *Id*.

The District Court Granted all Defendants, including attorney Haws, a no-contact order against Doria for "threatening and harassing emails . . . to College administrators, staff, and even students," as well as other attorneys at Defendant Haws' law firm." *See* p. 11 of the August 20, 2025 Order attached hereto as **Exhibit B**.

Currently, in his First Amended Complaint against HJL, Doria brings conspiracy claims against Haws. Doria does so despite a no-contact order against Doria for his harassment against Gust Rosenfeld during litigation.

On August 21, 2025 and January 15, 2026, Doria appears to have appealed two of these cases to the Ninth Circuit. *Id*.

### C.   *Doria v. Consumer Cellular*

On October 17, 2023, Doria sued Consumer Cellular in Federal District Court of Arizona. *See* **Exhibit C**. The case was dismissed without prejudice.

Less than two months later, he sued Consumer Cellular in the Superior Court. *Id*.

### D.   *Doria v. Yelp*

On February 11, 2023, Doria filed an unpaid wage claim (the "Wage Claim") against Yelp with the ICA, alleging he was owed wages from unpaid labor. *See* **Exhibit D**.

On May 27, 2023, the ICA issued its Determination, finding that any portion of the Wage Claim based on labor before February 11, 2022, was untimely and must be dismissed. *See Id*.

On June 12, 2023, Doria filed a Notice of Judicial Review of an Administrative Decision in his lawsuit against Yelp in Yavapai County Superior Court. *See Id*.

Two days later, on June 14, 2023, Doria sued Yelp in Federal District Court. On April 24, 2024, the Court dismissed the case on the separate issue of untimely claims to the ICA. *Id*.

### E.    *Doria v. AZ Board of Regents*

On or about September 25, 2023, Doria brought a Superior Court Complaint. *See* **Exhibit E**.

On October 16, 2025, Doria filed a Complaint against the Arizona Board Of Regents in the Federal Court for the District of Arizona. *Id*. The order dismissing his Federal Complaint states, "The current defendant cannot be sued in federal court and amending to include proper defendants would be futile. The complaint is dismissed without leave to amend." See id at p. 3 of the October 23, 2025 Order Dismissing.

### III.    ARIZONA LAW GIVES THIS COURT AUTHORITY TO DEEM DORIA A VEXATIOUS LITIGANT

A.R.S. § 12-3201. <u>Vexatious litigants; designation; definitions</u>

A. In a noncriminal case, at the request of a party or on the court's own motion, the presiding judge of the superior court or a judge designated by the presiding judge of the superior court may designate a pro se litigant a vexatious litigant.
B. A pro se litigant who is designated a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court.
C. A pro se litigant is a vexatious litigant if the court finds the pro se litigant engaged in vexatious conduct.
D. The requesting party may make an amended request at any time if the court either:
1. Determined that the party is not a vexatious litigant and the requesting party has new information or evidence that is relevant to the determination, even if there is not a pending case in the court.
2. Did not rule on the original request during the pendency of the action, even if there is not a pending case in the court.
E. For the purposes of this section:
1. "Vexatious conduct" includes any of the following:

**10**

**(a) Repeated filing of court actions solely or primarily for the purpose of harassment.**
**(b) Unreasonably expanding or delaying court proceedings.**
**(c) Court actions brought or defended without substantial justification.**
(d) Engaging in abuse of discovery or conduct in discovery that has resulted in the imposition of sanctions against the pro se litigant.
(e) A pattern of making unreasonable, repetitive and excessive requests for information.
(f) Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation.
2. "Without substantial justification" has the same meaning prescribed in section 12-349.

(emphasis added). Here, Doria's actions violate A.R.S. § 12-3201(E)(1)(a-c). While he does not necessarily file repeated motions in the same action, he unreasonably expands litigation into several courts without justification. Thus, he filed repeated motions (often seeking the same relief) in several courts. Arizona Courts have ruled that this type of litigation is vexatious under A.R.S. § 12-3201.

"Arizona courts possess inherent authority to curtail a vexatious litigant's ability to initiate additional lawsuits." *Madison v. Groseth*, 230 Ariz. 8, 14, 279 P.3d 633, 639 (Ct. App. 2012) c*iting* *Acker v. CSO Chevira,* 188 Ariz. 252, 254, 934 P.2d 816, 818 (App.1997) (defining a court's inherent authority as "such powers as are necessary to the ordinary and efficient exercise of jurisdiction"); *De Long v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir.1990) (recognizing strong precedent establishing inherent authority of federal courts "to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances") (citation omitted). Doria's extensive history in the Courts, shows that he knows or should know that he is foreclosed from bringing numerous suits in several courts. His groundless Federal Court filings are purposeful and without merit.

"In sum, a vexatious litigant order must rest on more than a recitation of the number of previously filed lawsuits." *Madison v. Groseth*, 230 Ariz. 8, 14–15, 279 P.3d 633, 639–40 (Ct. App. 2012) *citing De Long,* 912 F.2d at 1148; *see also Moy v. United States,* 906

11

F.2d 467, 470 (9th Cir.1990) ("[A vexatious litigant] injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous but also be patently without merit.").

"Overall, the district court should look to both the number and content of the filings as indicia of frivolousness and harassment." *Madison v. Groseth*, 230 Ariz. 8, 14–15, 279 P.3d 633, 639–40 (Ct. App. 2012) *citing In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988). As discussed below, Doria not only expands litigation into numerous Courts, he submits verified complaints that are perjurious. His ability to use the courts to harass his victims warrants curtailing through an order deeming him a vexatious litigant.

## IV.    DORIA ENGAGES IN VEXATIOUS CONDUCT

When one Court does not provide Doria the relief he seeks, he runs to another. A.R.S. § 12-3201(E)(1)(a) prohibits these repeated filings seeking the same or similar relief. He does this knowing how costly the litigation will become. Such knowledge is evidenced in his emails demanding payment to avoid expending litigation into federal court. *See* **Exhibit K**. ("The cost of defending a federal civil rights conspiracy case, even through the Motion to Dismiss stage, will far exceed this settlement amount.") An example of such behavior is the injunctive relief Doria sought in this Court was denied and less than a month later, he sought injunctive relief in Federal Court.

Doria uses the Courts to unreasonably expand proceedings and harass his Defendants. After several cases where his claims were dismissed based on lack of Federal jurisdiction and issue/claim preclusion, he knows that expansion of litigation into Federal Court is not allowable. But he unnecessarily expands litigation anyway. A.R.S. § 12-3201(E)(1)(b) prohibits this type of conduct.

As is evidenced by not only the record in this case, but the record in his prior lawsuits, Doria files numerous court actions over the same nexus of facts solely for the sake of harassment. After the August 20, 2025, dismissal of the case against the Yavapai College District Governing Board (*see* **Exhibit B**), Doria knew or should have known that he could not expand this case into Federal Court. As such, he meets the definition of

"Vexatious conduct" under A.R.S. § 12-3201(E)(1)(a) and (b). As such, Defendants seek a determination that Doria is a vexatious litigant.

Moreover, Doria's Federal claims contain perjurious allegations disputed by the written record. A.R.S. § 12-3201(E)(1)(c) allows a Court to determine vexatious conduct based on "actions brought or defended without substantial justification."

Doria's groundless accusations in his Federal Complaints include:

- "Defendants violated A.RS. § 33-2143 by refusing to renew the rental agreement without good cause and by retaliating against Plaintiff for complaining to government agencies." *See* **Exhibit L** at ¶ 31.

Per his email, Doria's alleged complaint to the Attorney General came <u>after</u> the eviction notices, <u>after</u> the preliminary injunction hearing, <u>after</u> he filed his federal complaint, and <u>after</u> he was evicted. *See* **Exhibit G** dated February 8, 2026. Notably, Doria testified that he did not make any claims about utilities or habitability at the preliminary injunction hearing. Doria perjures himself to fabricate claims and unreasonably expand this case into Federal Court. His federal claims are fabricated, groundless, and warrant a vexatious litigant finding.

- "Plaintiff [denied] reasonable accommodation for his disabilities" *See* **Exhibit M** at ¶ 2.

Doria disclosed his disability for the first time through disclosure to HJL on December 24, 2025. *See* **Exhibit J**. No such denial occurred.

- "Robert Haws was disciplined over his behavior in the prior case." *See* **Exhibit M** at ¶ 8.

Attorney Haw's State Bar profile reflects he has not received disciplinary action through the State Bar. *See* **Exhibit N**. Further, the Court issued a no-contact order barring Doria from contacting Defendants. *See* **Exhibit B** at p. 11 of the Order. There is a similar no-contact order in the Superior Court. *Id*.

- "Plaintiff provided documentation of his disabilities to Defendant Walsh and informed her that he required continuation of the dog-sitting permission as a reasonable accommodation under federal housing law." *See* Exhibit M at ¶ 16.

**13**

No such communication exists, Doria disclosed his disability for the first time through disclosure to HJL on December 24, 2025. *See* **Exhibit J**. Moreover, attorney Walsh was hired after Doria issued his November 25, 2025, notice to vacate.

- Doria also claims HJL threatened to "tow away his RV."

No such threats were made. No evidence or testimony has been provided regarding this claim. Doria brings this false accusation for the first time in his First Amended Federal Complaint.

- "On December 29, 2025, Plaintiff sought injunctive relief in Yavapai County Superior Court to prevent retaliatory eviction. Defendants withdrew their eviction notices immediately prior to the hearing to avoid judicial scrutiny, then resumed eviction efforts." *See* Exhibit M at ¶ 22.

In an email exchange between attorney Walsh and Doria, dated Dember 18, 2025, Doria misstates the text of an email sent to him outlining a few of the deficiencies of his Superior Court Case. *See* **Exhibit I**. Doria says without reason or context, "I am in receipt of the Notice of Withdrawal regarding the defective December 9, 2025, termination notice." Attorney Walsh immediately corrected him, stating, "No one has withdrawn notice of the agreement that you will vacate on the 9th." Yet Doria pursues his distorted version of events in his Federal Complaint under oath.

- At ¶ C. of his Complaint, Doria asserts "Evidence of Coordination and Animus" Attorney Walsh has never spoken to attorney Haws. Moreover, until the First Amended Complaint was emailed to attorney Walsh, she had not spoken to attorney Mongini. Mr. Mongini does not know or discuss cases with attorney Haws. No such evidence exists, and Doria fabricates these claims to justify his harassment of Defendants. This harassment likely violates the no-contact order. A.R.S. § 12-3201(e)(1)(a) provides remedies for this type of conduct.

- Doria claims the "protected activity" of seeking accommodations occurred before the eviction notices were tendered. *See* Exhibit M at ¶ 31 ("Defendants intentionally coerced, intimidated, and interfered with Plaintiff's enjoyment of

14

rights protected under the Fair Housing Act by initiating false and harassing eviction actions shortly after the protected activity."

Doria disclosed his disability for the first time through disclosure to HJL on December 24, 2025. *See* **Exhibit J**. The last eviction notice was tendered on December 9, 2025.

Further, Doria's First Amended Complaint re-works his retaliation claims to now assert the retaliation against him is due to his report of disability. This claim is fabricated. He did not argue as such at the preliminary injunction hearing, nor could he. The record reflects that Defendants learned of his disabilities after all the eviction notices were tendered and after he terminated his tenancy on November 25, 2025. A.R.S. § 12-3201(E)(1)(c) bars "Court actions brought or defended without substantial justification."

As outlined above, Doria's Federal Court allegations are lies disproven by the communications between the parties and attorneys. A.R.S. § 12-3201 allows a Court to deem a litigant vexatious for such groundless and harassing behavior. Moreover, the Court can look to the "content of the filings as indicia of frivolousness and harassment." *Madison v. Groseth, supra.* Here, the Court has heard from Doria and the story he tells this Court is not the same story he brings to Federal Court. Justice requires that Doria be barred from seeking further frivolous litigation.

Doria repeatedly brings claims against his defendants without substantial justification. He brings unjustified claims against HJL, attorneys Haws, Mongini, and Walsh. He brings unjustified claims against the defendants outlined above. He violates no-contact orders to bring his claims. And his claims are not supported in the record. Justice requires a vexatious litigant determination.

**RESPECTFULLY SUBMITTED** this 27th day of February, 2026.

**H & M LAW, PLLC**

By: */s/ Brittney K. Walsh*
    Brittney K. Walsh, Esq.
    Attorneys for Defendant Cottonwood Springs RV, LLC and Happy Jack Lodge, LLC

**15**

The foregoing e-filed and e-served
this 27th day of February, 2026, to:

Daniel T. Doria
989 S. Main St Ste A PMB 407
Cottonwood, AZ 863236
danieldoria105@yahoo.com
*Plaintiff Pro Se*

COURTESY COPY emailed to:

Hon. Linda Wallace
Yavapai County Superior Court
ptb@courts.az.gov

By:  */s/ Kristie Kellerhals*

**16**

# EXHIBIT P

# EXHIBIT P

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Daniel T Doria,

               Plaintiff,

v.

Yavapai College District Governing Board, et al.,

               Defendants.

No. CV-25-08043-PCT-MTL

**ORDER**

Pending before the Court is Defendants Yavapai College District Governing Board, Seth Weidling Sturdevant, Robert Haws, and John Butzer's (collectively "Defendants") Motion to Dismiss (Doc. 36), and several miscellaneous motions filed by Plaintiff Daniel Doria (Docs. 41, 43, 49, 53, 54, 55, 62). The Court now rules.[1]

## I.      BACKGROUND

The following summary is taken from the allegations in the Second Amended Complaint ("SAC") and documents properly subject to judicial notice.[2] The Court accepts the allegations in the SAC as true for the purposes of assessing the pending motion to dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

---

[1] The Court finds that a hearing is unnecessary for any of the pending motions, as the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

[2] Defendants attach various public records, detailing the state court actions between the parties. (Doc. 36-1 at 1-89, 94-96.) Because the state court documents are matters of public record, the Court will take judicial notice of them, but not the disputed facts within the documents. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("[Courts] may take judicial notice of undisputed matters of public record including documents on file in federal or state courts.") (citation omitted); Fed. R. Evid. 201(b).

This case is but one of many between Daniel Doria and Defendants. The saga begins in August 2023, when Doria executed a lease agreement (the "Lease") at the Verde Valley RV Park, owned by the Yavapai County Community College District ("Yavapai College"). (Doc. 36-1 at 46-52.) Doria also signed a Lease Addendum for Animals, permitting him to house his two personal pets in his RV. (Doc. 19 at 23-24.) As relevant here, the Lease prohibited Doria from using the premises for anything other than "residential purposes," including "carrying on any business." (Doc. 36-1 at 48.) Sometime later, Yavapai College discovered Doria was operating a pet-sitting business in violation of the Lease. (*Id.* at 54.) On December 12, 2024, it notified Doria that his business constituted a material breach, and failure to cure the breach would result in termination of the Lease. (*Id.* at 54-55.)

Doria then sued. On January 8, 2025, Doria filed simultaneous lawsuits against Yavapai College and Seth Weidling Sturdevant in the Verde Valley Justice Court (the "Justice Court Suit") and Yavapai County Superior Court (the "Superior Court Suit").[3] (*Id.* at 2-14, 20-34.) In the Justice Court Suit, Doria alleged state law claims for: (1) unlawful termination of tenancy; (2) attempt to circumvent tenant protections with illegal licensing agreement; (3) retaliation; and (4) failure to respond in good faith. (Doc. 36-1 at 11-12.) In the Superior Court Suit, Doria sued for (1) retaliation under Arizona law; (2) disability discrimination under the Fair Housing Act, 42 U.S.C. § 3604(f) ("FHA"); (3) breach of contract and covenant of good faith and fair dealing; (4) negligent and intentional infliction of emotional distress; and (5) declaratory relief. (*Id.* at 30-31.)

While those actions were pending, Yavapai College initiated eviction proceedings against Doria in the Verde Valle Justice Court for Yavapai County (the "Eviction Suit"). (*Id.* at 40-44.)[4] In that action, Yavapai College argued Doria purportedly breached the Lease by operating a business out of his RV. (*Id.*) Doria answered, asserting counterclaims for (1) retaliation and breach of duty under Arizona law; (2) discrimination under the FHA; and (3) emotional distress. (*Id.* at 57-75.) The case was tried before a jury, and on March 3,

---

[3] Mr. Sturdevant is the property manager at Yavapai College. (Doc. 19 at 2.)
[4] During the Eviction Suit, Yavapai College was represented by Robert D. Haws and John A. Butzer—two of the named defendants in this action. (*See id.* at 43.)

2025, the jury determined that Doria breached the Lease, thereby entitling Yavapai College to possession of the property. (*Id.* at 77.) The jury also found that Doria failed to prove his counterclaim for retaliation.[5] (*Id.*)

Doria's Justice Court Suit was dismissed on March 26, 2025. (*Id.* at 16-18.) Granting Defendants' motion to dismiss, the Justice Court determined that Doria's claims 1, 3, and 4 were barred under res judicata; that all claims were precluded because Doria failed to file a notice of claim under Arizona law; and that Doria's second cause of action failed to state a claim for relief as a matter of law. (*Id.* at 16-17.) Doria's Superior Court Suit was also dismissed on April 11, 2025. (*Id.* at 36.) In that action, the Superior Court granted Defendants' motion to dismiss, noting Doria "does not dispute Defendant[s'] argument that he failed to comply with the [notice-of-claim] requirements of A.R.S. § 12-821.01." (*Id.*)

So how did Doria end up before this Court? Well, on February 28, 2025, he filed a complaint against Defendants, alleging causes of action under state and federal law. (Doc. 1 at 5-6.) Because Doria is proceeding *in forma pauperis*, the Court screened his complaint and dismissed the pleading twice with leave to amend. (Docs. 13, 18.) The operative pleading is now the SAC and asserts the following causes of action: violation of the FHA (Count I); violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") ("Count II"); retaliation under Arizona law ("Count III"); and violation of Due Process (Fourteenth Amendment) ("Count IV"). (Doc. 19 at 5-9.) Like his prior complaints, the allegations in Doria's SAC arise out of the purported breach of the Lease and subsequent eviction. (*See generally* Doc. 19.)

Although far from clear, Doria appears to allege that his "psychological disabilities, including anxiety, depression, and minor paranoid delusions," prompted him to seek an accommodation of the Lease terms so he could operate his pet-sitting business. (*Id.* at 2-4.) In denying his request, Doria avers Defendants arbitrarily and discriminately enforced the Lease, terminating the agreement without cause. (*Id.* at 4-7.)

---

[5] Doria appealed this ruling to the superior court and Arizona Court of Appeals. Both appeals were dismissed for lack of jurisdiction. (Doc. 36-1 at 83-84, 88-89.)

- 3 -

Defendants have now filed a motion to dismiss. (Doc. 36.) Also pending, is Doria's Motion for Permanent Injunction (Doc. 41), Motion for Leave to File a Sur-Reply (Doc. 43), *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 49), Motions to Compel Deposition (Docs. 53, 62), and Motions for Adverse Inference Instruction and Issue Preclusion (Docs. 54, 55).

## II.      DISCUSSION

### A.      Doria's Motion for Leave to File A Sur-Reply

The Court first addresses Doria's request to file a sur-reply in opposition to Defendants' motion to dismiss. (Doc. 43.)

Sur replies are "generally discouraged" and only allowed "in the most extraordinary of circumstances." *Mexicanos v. Diamondback Shooting Sports, Inc.*, No. CIV 22-472-TUC-CKJ, 2023 WL 4237495, at *1 (D. Ariz. June 28, 2023) (citing *Briggs v. Montgomery*, No. CV-18-02684-PHX-EJM, 2019 WL 13039282, at *2 (D. Ariz. Mar. 19, 2019)). Courts generally recognize that a sur-reply may be warranted to address new issues or evidence raised for the first time in a reply. *Briggs*, 2019 WL 13039282, at *2. But a sur-reply is not justified to reemphasize arguments that were or could have been raised in a response. *See id.*

Doria's sur-reply aims to address the "material misstatements and omissions regarding the statutory notice-of-claim process under Arizona law." (Doc. 43 at 3.) Critically, however, Defendants' reply does not raise any new arguments or evidence relating to its notice-of-claim argument. (Doc. 42.) Defendants' motion adequately explains the legal and factual basis for its position that Doria failed to file a notice of claim as required by Arizona law. (Doc. 36 at 5-6.) Doria did not address this argument in its response (Doc. 37), and the issue is now waived. *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument"); *U.S. Aviation Underwriters, Inc. v. WesAir, LLC*, No. 2:08-CV-00891-PMP-LRL, 2010 WL 1462707, at *2 (D. Nev. Apr. 12, 2010) (arguments are deemed waived if "they were available but not raised in [the party's] response").

The Court will deny Doria's motion to file a sur-reply. (Doc. 43.)

## B.     Doria's Third Amended Complaint

Doria also filed a Third Amended Complaint. (Doc. 51.) Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Doria filed his Third Amended Complaint within the twenty-one-day limit for amending as a matter of course, and therefore, his amendment his timely. Nonetheless, Doria is required to follow this District's amendment procedures. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."). Local Rule of Civil Procedure 15.1(b) provides that "the amending party must file a separate notice of filing the amended pleading," and the notice must "attach a copy of the amended pleading that indicates in what respect it differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlining the text that was added." Further, an amended pleading "must not incorporate by reference any part of the preceding pleading." LRCiv 15.1(b).

Doria did not adhere to any of these procedures. Doria never filed a notice of amended pleading. The Third Amended Complaint does not indicate how it differs from the SAC. And Doria impermissibly incorporates the SAC by reference. For example, Counts I-V of the Third Amended Complaint do not include *any* factual allegations, but rather assert "(same as prior complaint)." (Doc. 51 at 5.) This is conclusory and insufficient.

Accordingly, the Court will strike the Third Amended Complaint. (Doc. 51.) *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (explaining that a district court has "inherent power to control their docket," including the power to strike documents from the docket).

- 5 -

### C. Defendants' Motion to Dismiss

The Court now turns to Defendants' motion to dismiss. (Doc. 36.)

#### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotations and citation omitted).

A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is more than a mere possibility; a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

#### 2. Analysis

Defendants argue Doria's SAC should be dismissed for three reasons: first, because he failed to file a notice of claim under Arizona law; second, because Doria's claims are barred by res judicata or collateral estoppel; and third, because the SAC fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). (Doc. 36.)

##### i. Notice of Claim

The Court addresses Defendants' notice-of-claim argument first. Arizona law requires a plaintiff suing "a public entity, public school or a public employee" to first file a notice of claim "within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). A notice is proper if it contains (1) a specific amount for which the claim can be settled; (2) facts supporting that specific amount; and (3) sufficient facts to permit

- 6 -

the public entity to understand the basis of its liability. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 (2007) (en banc); *Yollin v. City of Glendale*, 219 Ariz. 24, 28 (App. 2008).

When the governing board of a public entity is sued, as is the case here, a notice of claim must be served either to "the individual designated by the entity, as required by statute, to receive service of process," or "the entity's chief executive officer(s)." Ariz. R. Civ. P. 4.1(h)(4). In Arizona, Yavapai College's chief executive officers consist of the members of the school board. *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527-28 (2006) (en banc); *Batty v. Glendale Union High Sch. Dist. No. 205*, 221 Ariz. 592, 596 (App. 2009).

This means Doria was required to serve a notice of claim on each member of Yavapai College's governing board and on Mr. Sturdevant as a public employee. He did not. Accordingly, Doria's state law claim for retaliation against Yavapai College and Mr. Sturdevant is barred for failure to comply with Arizona's notice-of-claim requirements. Count III will be dismissed with prejudice against Yavapai College and Mr. Sturdevant in his official capacity.[6]

### ii. Res Judicata

Defendants also seek dismissal on res judicata grounds. (Doc. 36 at 6-9.) This Court is required to "give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001). To prevail on a res judicata defense, the moving party must establish the following: "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69-70 (2006). As to the "identity of claims" element, Arizona courts apply the "same evidence" test: "If no additional evidence is needed to prevail in the second action than that needed

---

[6] Even if Doria had properly served a notice of claim on these Defendants, his retaliation claim is nonetheless barred under res judicata for the reasons explained herein.

in the first, then the second action is barred." *Phx. Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 188 Ariz. 237, 240 (App. 1997).

The Court need not belabor on whether an Arizona court would treat some of Doria's claims as barred by res judicata because this Court has the benefit of multiple Arizona state court decisions answering the very question.

Starting with Count I, Doria alleges disability discrimination in violation of the FHA. (Doc. 19 at 5-6.) Doria first raised these allegations in his FHA claim before the Superior Court (Doc. 36-1 at 31), which the judge dismissed (*Id.* at 36). Doria later asserted a counterclaim for disability discrimination under the FHA in the Eviction Suit. (*Id.* at 67.) In that action, the jury ultimately determined that Yavapai College had just cause to terminate the Lease, and Doria did not meet his burden in proving his counterclaim. (*Id.* at 77.) Because Count I is identical to the claims Doria previously alleged that resulted in a final judgment on the merits, the first two elements for res judicata are met. Although Defendants Haws and Butzer were not named in any of the earlier suits, they represented Defendants Yavapai College and Sturdevant in each action. Further, Defendant Sturdevant is a privy of Yavapai College as its employee. Therefore, the Court finds the privity element is also satisfied.[7] With all three elements met, the Court finds that Count I is barred in this action under res judicata.

Doria's claim for retaliation in Count III has also been litigated on numerous occasions. Doria asserted a counterclaim for retaliation in the Eviction Suit (Doc. 36-1 at 66-67), which the jury rejected (*Id.* at 77). Later, in the Justice Court Suit, the court held that Doria's claim for unlawful retaliation was barred by the doctrine of res judicata. (*Id.* at 16-17.) And in the Superior Court Suit, Doria's retaliation claim was ultimately dismissed. (*Id.* at 36.) Because this exact claim between Doria and Defendants has resulted

---

[7] "Finding privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Hall v. Lalli*, 194 Ariz. 54, 57 (1999) (en banc) (citation modified). "Examples of persons in privity include employers and employees, principals and agents, and indemnitors and indemnitees." *Corbett v. ManorCare of Am., Inc.*, 213 Ariz. 618, 630 (App. 2006); *see also Cahn v. Fisher*, 167 Ariz. 219, 221 (App. 1990) ("[A] lawyer is the agent of his or her client.").

in a final judgment on the merits in state court, it is now barred here.

Although the allegations arise out of the same event and are largely duplicative, Doria has not previously asserted Count II (discrimination under the ADA) and Count IV (due process). Because this Court must apply Arizona preclusion principles, Counts II and IV are barred only if no additional evidence is needed to prevail here than in Doria's first suits. *Phx. Newspapers*, 188 Ariz. at 240. As to Count II, while both the ADA and the FHA prohibit disability discrimination, a claim under the ADA requires proof of an accommodation related to equal access to a public service, whereas the FHA requires proof of an accommodation related to equal opportunity to use and enjoy a dwelling. *Compare* 42 U.S.C. § 12132, *with* 42 U.S.C. § 3604(f). With respect to Count IV, Doria must show that his property interests were invaded by the government without an opportunity to challenge the invasion. *See Rainbow Valley Citrus Corp. v. Fed. Crop Ins. Corp.*, 506 F.2d 467, 469 (9th Cir. 1974). Thus, to prove Counts II and IV, Doria may need to present new evidence not previously required in the prior adjudication of his retaliation and discrimination claims. As a result, res judicata does not bar Counts II and IV under Arizona law.

Accordingly, only Doria's FHA (Count I) and retaliation (Count III) claims are barred under res judicata. Counts I and III will be dismissed with prejudice against all Defendants.

### iii.    Collateral Estoppel

Defendants also argue all claims should be dismissed as barred under the doctrine of collateral estoppel. (Doc. 36 at 9-10.) The Court only addresses this argument with respect to the remaining claims: Counts II and IV. Collateral estoppel, or issue preclusion, binds a party to a decision on an issue previously litigated if:

> (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties.

*Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223 (App. 2003) (citation omitted). If the first

four elements are satisfied, Arizona law permits defensive use of issue preclusion, which occurs when "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated unsuccessfully against another party." *Id.*

In the prior proceedings, Doria's counterclaims for retaliation and discrimination involved the same discriminatory enforcement of the Lease terms as alleged here. (*Compare* Doc. 36-1 at 66-67, *with* Doc. 19 at 5-8.) At the close of the Eviction Suit, the jury rejected Doria's counterclaim for retaliation and found for Yavapai College, determining that it had just cause to terminate the Lease. (Doc. 36-1 at 77.) The jury's verdict in favor of Yavapai College meant the College's enforcement of the Lease was valid—not arbitrary, discriminatory, or retaliatory as argued by Doria. While Doria recasts his legal claims under the ADA and Due Process Clause, both claims are predicated on the same issue—whether Yavapai College discriminately or arbitrarily enforced the Lease. This issue has been decidedly resolved against Doria in a final judgment after he received a full opportunity to litigate before a jury and two judges. The Court finds that each element of collateral estoppel is satisfied on this issue, such that it is entitled to preclusive effect in this action.

Because Doria's theories under the ADA and Due Process Clause are predicated on the very issue decided against him, Counts II and IV are precluded. The Court will dismiss these claims with prejudice against all Defendants.[8]

### 3. Leave to Amend

Doria requests leave to amend. (Doc. 37 at 6.) Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted "when justice so requires." Leave to amend is not available, however, where amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

This Court has already provided Doria multiple opportunities to amend his pleading. (Docs. 13, 18.) For the reasons stated above, all of Doria's claims are precluded by res

---

[8] Because Counts I-IV will be dismissed as precluded, the Court need not address Defendants' alternative argument that Doria fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

judicata or collateral estoppel; therefore, leave to amend will be denied as futile. *See D'Haenens v. Fed. Nat. Mortg. Ass'n*, No. 2:11-CV-01432-GMN, 2013 WL 1315223, at *1 (D. Nev. Mar. 28, 2013) ("Where an action is dismissed on the basis of res judicata and claim preclusion, any amendment is necessarily futile, since curing this deficiency is not possible by definition."); *Rainwater v. Banales*, No. CV 08-3789-CJC, 2008 WL 5233138, at *9 n.6 (C.D. Cal. Dec. 15, 2008) (leave to amend may be denied as futile where the claims would be barred by res judicata or collateral estoppel).

### D.    Defendants' Request for A No-Contact Order

Defendants also request a no-contact order, arguing Doria continues to contact representatives of Yavapai College directly and send "threatening and harassing emails . . . to College administrators, staff, and even students," as well as other attorneys at Defendant Haws' law firm. (Doc. 36 at 15-16.) Defendants also represent there is an existing no-contact order in place before the Yavapai County Superior Court. (*Id.*; *see also* Doc. 36-1 at 95.) The Court will grant the request as provided herein.

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** Doria's Motion for Leave to File a Sur-Reply (Doc. 43) is denied.

**IT IS FURTHER ORDERED** Doria's Third Amended Complaint (Doc. 51) is stricken. The Clerk of Court must strike the Third Amended Complaint (Doc. 51) from the docket.

**IT IS FURTHER ORDERED** Defendants' Motion to Dismiss (Doc. 36) is granted, and Doria's Second Amended Complaint (Doc. 19) is dismissed with prejudice.

**IT IS FURTHER ORDERED** denying all other pending motions (Docs. 41, 49, 53, 54, 55, 62) as moot.

**IT IS FURTHER ORDERED** Doria shall direct all communication with Defendants related to the issues raised in this lawsuit through Defendants' counsel.

. . . .

- 11 -

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and close this case. The Court retains jurisdiction to adjudicate any request for attorneys' fees.

**IT IS FINALLY ORDERED** that Defendants' request for fees and costs within their motion to dismiss is denied without prejudice to Defendants filing a timely motion for fees and/or bill of costs consistent with the federal and local rules of civil procedure.

Dated this 20th day of August, 2025.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge

# EXHIBIT Q

# EXHIBIT Q



**Brittney Walsh <brittney@hmlawfirmaz.com>**

## Rule 408 Offer

8 messages

**Daniel Doria** <dtdoria85@gmail.com>                        Thu, Apr 23, 2026 at 4:14 PM
To: Brittney Walsh <brittney@hmlawfirmaz.com>

Ms. Walsh,

In light of the current procedural posture on the federal docket, including Gust Rosenfeld's unopposed extension pending the Court's screening of the Second Amended Complaint, a narrow window exists to resolve the liabilities of you and your clients independently of co-defendants.

Before the federal docket accelerates into discovery, it is necessary to assess the realities of the parallel litigation. As you are aware, Judge Wallace effectively denied the vexatious litigant motion in the Superior Court proceedings, holding the defense to a state-level statutory standard that was not met. Moving forward on the federal docket, the landscape shifts further. Under established Supreme Court doctrine

, the federal court is obligated to construe my pro se pleadings liberally. I maintain the structural flexibility to simply remove legal citations from my filings, amend as necessary, and rely entirely on the raw factual record. You, as licensed counsel, do not have that privilege. You are strictly bound by the Federal Rules of Civil Procedure to defend the merits of a factually compromised administrative record, exposing both you and your clients to significant Fair Housing Act fee-shifting liabilities.

This communication serves as a unique opportunity for you, Mr. Mongini, Happy Jack Lodge LLC, and Cottonwood Springs RV to achieve a global exit from our ongoing disputes. My objective is to ensure that accountability for the legal strategy and statutory violations rests with the leadership and architects of that strategy: Robert Haws and Gust Rosenfeld P.L.C.

I am prepared to provide a Joint Stipulation of Dismissal with Prejudice for you, Michael Mongini, Happy Jack Lodge LLC, and Cottonwood Springs RV in this federal action, contingent upon the execution of a settlement agreement containing the following terms:

1. Financial Remittance

A total settlement of $20,000.00, structured in twenty (20) monthly installments of $1,000.00, completely releasing you and your clients from all federal FHA and conspiracy claims in this action.

2. Mutual Dismissal of State Court Proceedings

The parties agree to execute a mutual Joint Stipulation to Dismiss with Prejudice all pending claims, cross-claims, and counterclaims in the active Yavapai County Superior Court litigation. Each party shall bear their own costs and attorney's fees associated with the state court matters.

3. Factual Stipulations Regarding the August 20 Record

To pave the way for the remainder of the litigation against Gust Rosenfeld and Mr. Haws, the settlement requires a signed, sworn declaration from Mr. Mongini, as the authorized agent for the LLCs, stipulating to the following facts:

• The August 20 administrative record contains material factual inaccuracies.

• The drafting, approval, and strategic deployment of the August 20 administrative record was directed, advised, or heavily influenced by the legal counsel of Robert Haws and Gust Rosenfeld P.L.C.

• Mr. Mongini and the LLCs relied upon the specific legal guidance of Robert Haws regarding the execution of the eviction strategy and the associated documentation.

4. Subpoena Compliance and Evidentiary Cooperation

Upon dismissal, you and your clients agree to accept service of, and unconditionally comply with, any future third-party Rule 45 subpoenas issued by Plaintiff strictly regarding non-privileged administrative communications between Happy Jack Lodge LLC/Cottonwood Springs RV and Gust Rosenfeld P.L.C.

5. Curing of the ER 1.7 Conflict

Upon execution of the agreement, you will be formally dismissed as a named defendant, resolving your current ethical conflict of interest, and your clients will be removed from the federal docket, avoiding the expense of federal discovery and trial.

This severed resolution recognizes that the ultimate liability for the legal maneuvering belongs with Gust Rosenfeld. It provides an immediate, financially capped exit for the property owners and their primary counsel, while simultaneously resolving the state court gridlock, before the federal screening order triggers the mandatory 14-day responsive window.

If you and your clients are interested in this severed resolution, or a counter, let me know. This offer remains open until 5:00 PM MST on Wednesday, April 29, 2026.

Daniel T. Doria

Plaintiff, Pro Se

